Knutson and wife vs. Bostrak and wife.

*By the Court.*— Judgment affirmed.

Knutson and wife, Appellants, vs. Bostrak and wife, imp., Respondents.

| 99 | 469 |
| p113 | 315 |
| 113 | ¹317 |
| 99 | 469 |
| 57 LRA | 462 |

*April 16 — May 3, 1898.*

*Conveyance by parents on condition of support: Rescission for failure to perform: Remedies: Waiver.*

1. The consideration for the conveyance of a farm and personal property by parents to their son was his agreement to support them during the remainder of their lives; to furnish them each year certain food supplies, the use of certain portions of the dwelling with free ingress and egress to any part thereof; to furnish them plenty of firewood and water ready for use at all times, and to care for them in all things, and furnish them with a doctor and medicine when needed, and with decent burial when dead. *Held,* that the agreement, fairly interpreted, required the son to devote his personal efforts to support and care for them, and that his failure to furnish his parents with a· sufficiency of wood and water, and his getting married and removing several miles away, and failing to give them any personal care or attention, even when sick, but leaving them chiefly to care for themselves, were substantial breaches of his agreement, for which a court of equity would set aside the conveyances.

2. Although, as a part of the transaction, the son gave to his parents a mortgage on a part of the farm as security for the performance of his agreement, and another mortgage to secure the payment of a sum of money, they were 'not limited to their remedy on such mortgages.

3. That the parents commenced an action to foreclose one of such mortgages, which however they dismissed before commencing the action to set aside the conveyances, was no waiver of or bar to their right to maintain the latter action to obtain the relief sought therein.

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This action was brought to set aside and rescind a conveyance of certain real estate, a bill of sale of personal property, and the agreement under which they were executed, between the said plaintiffs and the defendant, their son, *Knut J. Bostrak.* There was a finding and judgment in the circuit court against the plaintiffs, upon which judgment was given against them denying the relief claimed, from which they appealed.

The complaint stated, in substance, that the plaintiff *John Knutson*, December 8, 1892, was, and for a long time had been, the owner in fee and in possession of 165 acres of farming land therein described, of the value of $7,000, and owned a large amount of personal property, stock, and farming implements, of the value of $1,000; that the plaintiff *John Knutson* being of the age of seventy-three years, and his wife, *Mary Knutson*, of the age of sixty-eight years, and being both infirm of health and unable longer to take care of or superintend the said farm and property, and anxious to make such disposition of it as would secure to them a sufficient support in sickness and in health during the remainder of their lives, whereby they might be relieved from the labor and care of superintending it, and might be enabled to continue to live upon it, and make it their home, and might also have the care of a near relative, they agreed that the defendant *Knut J. Bostrak*, their son, should have a deed of said farm and a bill of sale of said personal property, and in consideration therefor he should secure to the plaintiffs a home on said farm, and provide them with food,

clothing, medical attendance, care, and assistance, both in health and in sickness, during their lives, or the life of the survivor, and that the defendant *Knut J. Bostrak* should also execute and deliver a note and mortgage to the plaintiff *Mary Knutson* for $2,000, payable in ten years, and that the title to said premises in said defendant *Bostrak* should be contingent upon the complete performance of the agreement set forth in the complaint; that the defendant agreed to receive such conveyance and bill of sale on said terms, and to execute said note and mortgage, and to support and maintain the plaintiffs as above stated; and that they duly executed and delivered to him on that day a deed of said premises and a bill of sale of said personal property.

It was alleged that the defendant *Bostrak*, being then unmarried, in consideration therefor and as part of said transaction, executed and delivered to the plaintiffs a written agreement, in substance and to the effect stated; that is to say, that said *Bostrak*, in consideration of the conveyance of said lands then made to him by the parties of the second part, agreed and bound himself, his heirs, executors, and assigns, to support and care for the plaintiffs in sickness and in health, during their natural lives, or the life of either of them; to furnish to them on the 15th day of November, 1893, and annually thereafter on that day, 400 pounds of good flour, 100 pounds of pork, 100 pounds of beef, ten pounds of good coffee and twenty pounds of granulated sugar, twenty bushels of oats, five bushels of potatoes, twenty bushels of corn; to keep, feed, and care for (winter and summer) one horse, three cows, and three sheep; to milk said cows, and care for the milk, and churn the butter; to furnish to them the east room of the present dwelling, and all of upstairs of the same, and use of the cellar, to be kept in good order, and maintained, and to have free ingress and egress to the same through any part of the building; to furnish in the house plenty of good firewood and water ready for use at all times;

to have free use of the barn and basement for the stock, and the west part of the tool shed; to give them annually one half of the fruit raised in the garden on the trees that are now growing, and one half of the eggs from the chickens; to care for them in all things, and furnish them with a doctor and medicine when needed, and at death a decent burial.

To secure the performance of the above contract said *Bostrak* then and there duly executed and delivered to the plaintiffs a mortgage conditioned for the performance thereof, and covering the south sixty-five acres of the E. ½ of the S. E. ¼ of section 9, and the N. E. ¼ of the N. E. ¼ of section 16, town 6, range 11, Dane county, and being a portion of the lands conveyed on that day to him by the plaintiffs. Said deed and mortgage were duly witnessed, acknowledged, and recorded, and said *Bostrak* at the same time executed and delivered to the plaintiff *Mary Knutson* his note for $2,000, payable ten years after date, with interest at six per cent. payable annually after June 8, 1893, with the privilege of paying not less than $100 thereon at the end of any year; and to secure the same he duly executed and delivered to the plaintiff *Mary Knutson* a mortgage, bearing even date with said note, on the same property described in the mortgage given to secure said agreement for maintenance, and which was also duly witnessed and acknowledged. It was alleged that said deed, bill of sale, and contract for support, and the mortgages to secure said contract, and the promissory note and mortgage securing the same, were part and parcel of the same contract, and all of said instruments were executed and delivered at the same time, and that said *Bostrak* paid no other or different consideration for said premises and personal property except as contained in said agreements; that shortly thereafter the defendant *Bostrak* went into possession of the premises described, took possession of said personal property, and so remained until on or about May 25, 1896.

It was alleged that the defendant *Bostrak* had failed to perform the covenants of said agreement by failing to keep in order and maintain the rooms set apart for the plaintiffs, by failing to furnish in the house firewood and water, by failure to furnish them medical attendance when needed and requested, and had refused, and still refused, to furnish the articles and the support and care provided for in said contract, but, on or about May 25, 1896, left the premises, and went to reside on a different farm in said county, and that he had, since his departure, wholly failed to comply with any of the terms of said agreement, and by reason of such noncompliance the plaintiffs had re-entered the premises described as for condition broken, and were then in possession thereof; that he had appropriated all of said personal property, and changed its form so that it could not then be identified, and that a rescission of the bill of sale would be of no benefit to the plaintiffs; that defendant *Petrine Bostrak* is the wife of said defendant *Knut J. Bostrak*, and claims an inchoate right of dower in said premises; that May 2, 1896, *Knut J. Bostrak* executed and delivered to the defendant Susan S. Cady a mortgage on the premises described in said warranty deed for the alleged consideration of $3,000, which is recorded, etc., and plaintiffs allege that said Susan S. Cady knew, before receiving said mortgage, of the existence of said agreement for support, and that the title of the mortgagor, *Bostrak*, was liable to be defeated in case of noncompliance therewith; that said *Bostrak* on the same day executed and delivered to the defendant Stoughton State Bank a mortgage for $2,000, covering the property described in said warranty deed, that said mortgage was recorded, and that said bank knew, before receiving it, of the existence of said agreement for support, and that the title of the mortgagor was liable to be defeated in case of noncompliance therewith.

Judgment was prayed canceling said deed and contract,

and the mortgage securing said contract, and the $2,000 note and mortgage securing the same, and that all of said instruments might be declared void and of no effect, and that plaintiffs might have restitution of said premises, and that the court might divest the title of said *Bostrak*, and transfer the same to the plaintiff *John Knutson*, and for their costs and disbursements, and for such further and other relief as might be just.

The separate answer of *Bostrak* and wife admitted that at the time of the execution of said instruments plaintiffs were somewhat advanced in years, but denied that they were infirm in health, or unable longer to take care of and superintend said farm, and admitted that they were desirous of making such disposition of said property as would secure to them sufficient support and maintenance in health and in sickness during the remainder of their lives, or the life of the survivor, and that they sold and conveyed said real estate and personal property to *Knut J. Bostrak* in consideration of $2,000 and the execution of the contract mentioned, and admitted the making of the warranty deed and of the mortgage securing the $2,000 note, and the recording thereof. The answer averred that the defendant *Bostrak* had paid the interest on said note as it became due, except the last year's interest, and had paid the sum of $200 principal; that the plaintiffs commenced an action to foreclose said mortgage. They admitted the agreement set out in the complaint, and that it was recorded, and the making and execution of the mortgage to the plaintiffs to secure the performance of such agreement, and that in case of the failure or omission of the defendant to perform said contract he should be liable thereon in damages not to exceed $2,000, and not otherwise; that he took possession of said premises, and had since continuously held possession, and said personal property, except as to some portion of the same which had been used or disposed of by him. He admitted also the

execution of the mortgage to Susan S. Cady, as well as the mortgage to the Stoughton State Bank, and that both were recorded; and, except as specifically admitted or denied, they denied every allegation and matter stated in said complaint. The defendants averred that the agreement mentioned, and all parts thereof, had been fully performed as required, and alleged that May 25, 1896, they moved off from said premises to a farm within a few miles therefrom, with the full knowledge and consent of the plaintiffs, but that they had at all times fulfilled all the terms of said agreement, and offered to fulfill the same so long as the plaintiffs, or either of them, might live; that they had paid taxes, insurance, and for repairs, various sums, no part of which or of said interest or principal paid to the plaintiffs had been repaid to the defendant; that certain of the work stipulated to be done by the defendant in said agreement had been, during the entire existence of the contract, done by the plaintiffs by their own desire and choice.

It was found by the court that the plaintiffs executed and delivered to the defendant *Bostrak* the warranty deed of the premises mentioned December 8, 1892, and that the plaintiff *John Knutson* sold and conveyed to said *Bostrak* certain personal property of the value of $450, and that he at the same time executed and delivered to the plaintiff the agreement or contract mentioned in the complaint, and to secure the faithful performance of said agreement he executed and delivered to the plaintiffs a mortgage for the sum of $2,000, in substance as stated in the complaint, as well as the note to *Mary Knutson*, for $2,000, and a mortgage securing the same as stated therein; that the defendant *Knut J. Bostrak* is the son of the plaintiffs, and said several agreements and instruments were made and entered into by him at the request of the plaintiffs; that at the time the plaintiff *John Knutson* was about seventy-three years of age, and *Mary Knutson* about sixty-eight years of age, and that the said

Knutson and wife vs. Bostrak and wife.

*John Knutson* had for many years been subject to occasional spells of fits, the sickness lasting from half an hour to two or three hours; that otherwise the health of said plaintiffs was good for people of their age; that shortly after the execution of said agreement the parties entered upon the performance thereof, and the defendant *Bostrak* had been in possession of the farm, worked the same and received the proceeds, and continued to reside thereon until May, 1896, when he removed onto a farm within a few miles of said premises, which was done with the knowledge and consent of the plaintiffs, upon the marriage of the defendant *Knut J. Bostrak* to the said *Petrine Bostrak.*

It was found that the defendant *Bostrak* furnished the plaintiffs on the 15th of November in each year, as required by said contract, the various articles mentioned and specified therein, and that it was stated by plaintiffs that, so far as the services required by said contract to be performed by the defendant, it was the desire of the plaintiffs that the same should not be performed except in case of their sickness, or for any other reason they were unable to perform them for themselves or demanded the performance thereof, as they preferred to do those things themselves, and for a number of years immediately before the commencement of the action the plaintiffs had been performing said services for themselves as a matter of choice, though said *Bostrak* was at all times ready and willing to perform the same; that during a portion of the last year defendant *Bostrak* failed to furnish plaintiffs with the full amount of wood required for their use, and during a short period, while the well was out of repair, did not furnish them with well water for use upon the premises as agreed, and for a considerable period he did not provide a pump for the well at the house, which made it necessary to draw the water from the well with a rope; that with these exceptions the defendant *Bostrak* had at all times fully performed all the conditions of said contract by him to

be performed; that he had paid to *Mary Knutson* the annual interest upon the note for $2,000, except the last two years' interest thereon, and had paid the sum of $200 of the principal, and the sum of $200 interest, which sums are still retained by the plaintiff *Mary Knutson;* that the fair rental value of the property was $300 per annum.

As conclusions of law the court found that the breach of said contract in respect to furnishing the wood and water was not a breach in a substantial matter, and did not entitle plaintiffs to a rescission of the agreement, and that there had been no such breach of said contract as to entitle plaintiffs to a rescission; that the plaintiffs, by their conduct and agreement, had waived their rights to assert the failure of defendant to comply with the literal terms of the written agreement as a breach thereof; that they were not entitled to a rescission of the deed and agreement as prayed, but their remedy was by an action to foreclose their mortgages; that the defendants were entitled to a judgment dismissing the plaintiffs' complaint, but without costs to either party, which was entered accordingly, and from which the plaintiffs appealed.

At the trial the plaintiff *John Knutson* testified, among other things, that he was past seventy-five years of age; that he acquired most of the farm thirty-one years before, and had made the improvements; that it was worth $7,000; that he had a disease of the heart, which made it impossible for him to conduct the farm, and when attacked with such sickness he could not see, but if he laid down on his hands and knees sometimes it passed off quickly and he regained his sight; that he had been subject to these spells for over fifty years; that he was very weak after having them; that they lasted for half an hour at a time, sometimes for an hour, and sometimes for two or three hours; that he made this arrangement with his son because he did not think he was strong enough to work the farm any longer, and he told the defendant *Knut J. Bostrak* that he was to have the

farm because he had some faith in him. "We were to be supported from that time until our death. It was said that he was to remain on the farm as long as we lived." He testified to the failure of the defendant *Bostrak* to perform the agreement; that for the first year, but not afterwards, he kept and cared for three cows; that he had not kept their rooms in order, and had washed them only once; that the pump had been taken from the well, so that they drew the water up with a rope and chain; that his son had not, after the pump was taken out, hauled any water for him; that the water became unwholesome, and unfit for use; that his son left the farm in May, 1896, and he did not know he was to leave until he saw them going away; since he left there had been no one living in the house but himself and wife, until within two or three weeks past; that from the time he left his son had done nothing for him or his wife except that he had given them in November what they were to have to live on. These things he had given them regularly, but had given them no personal care or attention, or sent any one to do so. There was firewood prepared last winter, in January, before he took it away, quite a lot, and he came and took it away himself, most of it; "but I protested against his taking it." There were about thirty wagon boxes of it in the wood shed, and a large pile outside, before he began hauling it away. Sometimes he came and took it away from the shed, and sometimes his hired man. Some of it witness had cut and prepared, and some he had, and some his hired man. "When he came there to get the last load I spoke of, I had a talk with him. 'Are you going to take the wood that is left now, *Knut?*' He said, 'Yes, I am.' 'You must not do that,' I said. 'Well, I am going to take it, every stick of it, if I can get it in the box; but I don't think I can get it all in.' 'But what am I to do for wood then, in the face of the cold winter?' I said. He left about half a box, as much as I thought would last about a

week, and if it had been cold it would have been too little for that time." But the plaintiff hired one Johnson to cut and prepare wood for him the last winter, and he worked himself as much as he was able. The defendant *Bostrak* did not furnish him any wood, and had not since. He had not carried in the house for them a single stick of wood or drop of water. He further testified that in 1896 his wife was sick about four weeks, was bedridden during that time, and during that time the son lived in the same house, but he was never in to see her, and did not offer to do anything for her. Last winter she was much sicker, four or five days. "He sent no one to help us, and did not, at that time, offer to do anything for us."

*Mary Knutson,* one of the plaintiffs, testified that after her husband deeded the land to *Knut Bostrak,* he (*Knut*) had not milked the cows or taken care of them, and had not furnished any water. In the winter of 1896 she was so sick she was lying in bed three or four weeks. "*Knut* was in the house, but never came into the room where I was sick; so far as I know, never asked how I was, and did not offer to do anything for me. Before he left the farm, he had no talk with me about leaving. I first learned he was going away about the time he left. Since that time he has never been to the house, or offered to do anything for us. Last fall I had a talk with him, and asked him if he was going to leave us alone during the winter. I said, 'Well, you know how your father is, *Knut*,'— that he was subject to his attacks while eating, and sometimes at night. 'It may be that it is dangerous for me to be alone.' He sent no one in the winter to help take care of us."

William Seamanson testified to a conversation with defendant *Bostrak* in March, 1897, when he was asked whether he would, in the future, fulfill the contract with the old folks, as he had agreed to, and he answered, "No, I cannot, and will not."

The defendant *Bostrak* testified that he told the old peo-ple in the summer of 1894 that he would do anything he could for them, whether it was in the contract or not, if they would speak to him; that he had never refused to do anything for the old people, or get anything for them, whether it was in the contract or not, if it was suggested to him; that he judged he left plenty of wood at the old place for two or three months; that neither he nor any of his men ever reported to him that he was out of wood, or anything of that kind; that he heard nothing about his mother being sick several weeks last winter, when he was there, and that he spoke to them about moving off the place before he moved, and they made no objection; that he saw his father and mother haul water from the well with a pail and rope a good many times; he never offered to do it for them; that he took no pains to furnish water to his parents; that he hauled quite a bit of wood away during the sum-mer, some during the fall, and some during the winter; that he got the last load the 19th of January; that he did not go into the rooms of his parents in 1896 oftener than any other time, never went in except when he wanted to say something to them, and it might be months he would not go into the rooms at all; that he knew his father was subject to sick spells, and had them frequently, might have them in the daytime or nighttime, and knew that his father and mother were living there alone last winter; that his mother spoke to him one time about having some one to come there and stay.

It was shown that in May or June, 1894, *Knut Bostrak*, in a conversation between the parties, said he would do everything for his mother if she would speak to him about it,— baking the bread, fixing the meals, washing the clothes, and scrubbing the house and fixing things like that. She said, "No; I am going to fix my own bread, and my own meals, as long as I am able to do it." *Knut* said he would do

Knutson and wife vs. Bostrak and wife.

it whether it was in the contract or not, if they would speak to him about it. One Jacobson testified, on behalf of the defendant, to a conversation with the old gentleman, in which he stated, in substance, that all the trouble came from himself and his wife; that *Knut* had done everything that could be done for them, all that could be expected any one would do, and that, if they had done what was right, *Knut* would not have left the place.

For the appellants there was a brief by *Erdall & Swansen* and *H. A. Huber*, and oral argument by *John L. Erdall*.

*A. W. Anderson* and *G. E. Roe*, for the respondents, argued that, to justify a rescission of the conveyances, a breach of the agreement in a substantial part comprehending the root of the whole must be proved. Here no such breach was proved. *Smith v. Smith*, 34 Wis. 320; Bishop, Cont. § 828; *Tucker v. Tucker*, 35 Mich. 365; *Norton's Adm'r v. Perkins*, 67 Vt. 203; 3 Am. & Eng. Ency. of Law, 922–925; *Reid v. Burns*, 13 Ohio St. 49. The plaintiffs have waived the right to rescind by accepting articles provided for in the contract, and by not objecting to things now claimed as breaches, and also by commencing to foreclose a mortgage which was a part of the transaction. *Thrall v. Thrall*, 60 Wis. 503; *Willard v. Henry*, 2 N. H. 120; *Hubbard v. Hubbard*, 97 Mass. 188; Jones, Real Prop. § 702. The commencement of such foreclosure was an election of their remedy which prevents their subsequently rescinding. *Crook v. First Nat. Bank*, 83 Wis. 31–42, and cases cited; *Hildebrand v. Tarbell*, 97 id. 446; *Thomas v. Watt*, 104 Mich. 201; *Morris v. Rexford*, 18 N. Y. 552; *Conrow v. Little*, 115 id. 387. The plaintiffs' proper remedy was by foreclosure of the mortgages. *Peterson v. Oleson*, 47 Wis. 122.

PINNEY, J. Considerable evidence was produced at the trial showing the relations existing between the parties, and how completely the family arrangement into which they

had entered with the best of intentions had miscarried and
substantially failed to accomplish its purpose.    There is no
reason, we think, to suppose that the parties, with mutual
accord, will again attempt to carry out its provisions.    The
pleadings and evidence, in our judgment, show abundant
ground for rescinding the agreement and the deed of con-
veyance and bill of sale executed under it, and for restoring
the parties, as near as may be, to their former rights and
condition.    From a fair construction of the agreement and
the various instruments executed at the same time, as applied
to the subject matter and situation, we think they must be
construed together, and regarded as parts and provisions of
a single instrument.    They appear to have been induced
largely by the confidence the plaintiffs very naturally had
in their son.    An equitable accounting and adjustment of
the matters and differences between the parties should be
adjudged according to their respective rights as they may
appear.    The pleadings are so framed that such a judgment
may be rendered as between them, and which will provide
for and adjust all their rights and equities.

The agreement manifestly required the defendant *Bostrak,*
in consideration of the conveyance of the lands then made
to him by the plaintiffs, to support and care for his aged and
infirm parents in sickness and health during their natural
lives, or the life of either of them; to furnish to them on the
15th of November in each year, and annually thereafter,
certain specified articles of food, and the use of certain por-
tions of the dwelling, with free ingress and egress therefrom
to any part of the building; to furnish in the house plenty
of good firewood and water ready for use at all times; and
"to care for them in all things and furnish them with a
doctor and medicine when needed, and at death with a de-
cent burial."    They were transferring and conveying to
their son their farm and home with which they had pro-
vided themselves by the care and industry of a lifetime,

where he should personally minister to their wants and necessities, and which was still to be their home and refuge in their declining years. Evidently the language used, taken in connection with the situation and circumstances, clearly indicated and amounted to a promise that he would devote his personal efforts to support and care for them, and carry out the terms of the agreement according to their fair import and meaning. The consideration for the conveyance of the farm and bill of sale of the personal property was the agreement entered into by the son for the support and maintenance of his aged and infirm parents during their lives. The performance of the condition upon which the conveyance and transfer were made was executory, and when taken and construed together, they appear to have been taken and held by the defendant under a condition subsequent for the support and care of his aged parents. *Beckman v. Beckman,* 86 Wis. 655; *Hartstein v. Hartstein,* 74 Wis. 1; *Bogie v. Bogie,* 41 Wis. 209; *Bresnahan v. Bresnahan,* 46 Wis. 386; *Blake v. Blake,* 56 Wis. 393; *Delong v. Delong,* 56 Wis. 514. It is in accordance with the principle of these cases for a court of equity to freely set aside such conveyances for a breach of such condition, and to do full equity between the parties thereto as the circumstances of the case may require. It is plain that it was intended that the plaintiffs were to be supported and cared for by the defendant, who was to minister to their wants and necessities in their old home, certain portions of which were devoted to and reserved specially for their occupancy and use.

It would manifestly be unreasonable to hold that, after the defendant *Bostrak* had secured the title to this valuable farm, and the personal property transferred by the bill of sale, he might abandon the plaintiffs, and leave them to care for themselves as best they might, and still retain the property conveyed to him. The property so conveyed and transferred to the defendant was transferred and conveyed upon

a condition of substantial and faithful performance upon his part of the stipulations of the agreement in question. The written instruments, taken together, are upon a condition subsequent that the defendant should fairly and faithfully perform the terms and conditions of said agreement, and that he would support and care for the plaintiffs during their natural lives; and this care we must hold was intended to be personal on the part of their son, in whom they placed special trust and confidence. Instead of keeping faith with his aged father and mother, he virtually renounced his natural and covenanted duty to personally care for and support them, and practically abandoned them, failed to provide them with wood and water, and left them to care for themselves as best they might during the rigor of a long winter, and even drew away and deprived them of much of the fuel provided for their use. His failure to supply them with water suitable for use, or with the proper means to draw it from the well; his failure to keep their rooms in good condition, and to give any personal attention to his mother during her illness in the winter of 1896, or to go into her room in the house in which they all lived during that time, or to render her any personal assistance, and leaving them alone during the entire winter without sending any one to help take care of them; and his absolute refusal in March, 1897, to fulfill or perform in the future the contract he had made,— evinced in the clearest manner an utter and absolute disregard of his plain duty. Finally, he removed from the farm to another one he had purchased a few miles distant, so that he could give little or no aid to them when it might be most urgently required. These acts and omissions and others shown by the evidence indicate an utter renunciation of all duty and liability to perform or discharge his obligations to the plaintiffs under the contract or otherwise, and constitute, as we must hold, a breach of the defendant's contract of the most substantial character, requiring the exercise of the

Knutson and wife vs. Bostrak and wife.

powers possessed by courts of equity to redress such wrongs and grievances. We are unable to see how it can be maintained that there has been no such breach of contract as to entitle the plaintiffs to any relief, as contended by defendants' counsel, or to warrant an absolute dismissal of their complaint.

The printed case purports to contain all of the evidence, and we do not see anything to warrant the conclusion that the plaintiffs had waived their right to insist upon the performance of the contract in respect to the material and substantial matters indicated, or to any relief for a breach of its provisions. The action brought by the plaintiff *Mary Knutson* to foreclose the mortgage executed by the defendant to her was dismissed before the present action was instituted. The bringing of that action, and the dismissal thereof, was certainly no waiver of or bar to the present equitable action to obtain the relief thereby sought. The right of the plaintiffs to seek and have a rescission in equity of the contract, deed, and bill of sale as for a breach of condition subsequent still remained. The plaintiffs were not restricted or limited to an action for the foreclosure of either of the mortgages executed to secure the performance of the agreement, or the payment of the $2,000 note executed to the plaintiff *Mary Knutson*.

For the reasons stated, we think that the judgment appealed from dismissing the plaintiffs' complaint is erroneous, and must be reversed. The defendant Susan Cady and the defendant Stoughton State Bank do not appear to have answered the plaintiffs' complaint, or to have contested their right to the relief they have claimed, and the equities between the plaintiffs and these parties, whatever they may be, have not been determined.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded to that court, with directions to render judgment rescinding and setting aside the

said agreement, and the deed of conveyance and bill of sale executed under and in pursuance thereof, and granting the said plaintiffs restitution of said premises, and for such further or other relief as shall be according to law.