Gall, Respondent, vs. Gall and another, imp., Appellants.

*November 17—December 12, 1905.*

*Deeds: Conditions subsequent: Conveyance by parent to child: Agreement to support: Breaches: Prior action: Election of remedies: Rescission: Rights of mortgagee: Notice: Pleading: Evidence.*

1. A conveyance of land by a mother to her son in consideration of his agreement to support and maintain her and give her a home upon the premises created an estate upon condition subsequent, subject to be defeated upon nonperformance of the condition.

2. The bringing of an action at law by the mother to recover damages on account of breaches of the agreement for support by failure to make annual payments as therein provided, and the prosecution thereof to judgment, was not such an election of remedies as would preclude her from maintaining an action to rescind the conveyance on account of subsequent breaches, including the giving of an option to third persons to purchase the land and the delivery of a deed in escrow without any provision to protect her interest, where, although the option was given before the commencement of the prior action, the plaintiff had no notice of it until thereafter.

3. The title of record being in the son, and the owners of the option claiming as purchasers in good faith, the mother was not bound to contest the rights of such owners, but might ratify and submit to the contract of sale without impairing her right by reason thereof to a rescission of her conveyance to her son.

4. The acceptance of annual payments made after the commencement of the prior action was not a bar to the parent's right to rescind on account of subsequent breaches.

[5. To what extent, in the action to rescind, the trial court might look into the record of the prior action at law for breaches of the agreement to support, not determined.]

6. In an action to rescind a conveyance of land for breach of a condition subsequent the complaint alleged that one of the defendants had or claimed some interest in the land by reason of contract relations with the grantee, and prayed that his rights be determined. Said defendant answered that his interest was acquired in good faith without knowledge of any claim of plaintiff to the land. *Held*, that this raised the issue of notice, on the part of said defendant, of plaintiff's equities.

7. A mother conveyed land to her son in consideration of his separate, unrecorded agreement to support and maintain her and give her a home upon the premises, thus creating an estate upon condition subsequent. The son afterwards mortgaged the land to one who knew that the mother had a room reserved in the house and had some rights or interest in the place, and that a part of the money raised by the mortgage went to pay a judgment against the son in an action against him by his mother for breaches of the agreement for support. *Held*, that evidence of these facts, with other evidence, sustained a finding that the mortgagee had notice of the mother's equities.

8. Having such notice that the mortgagor had only an estate upon condition subsequent, the mortgagee's rights are subject to the equities of the mother, even though he did not know that there had been any breach of the condition.

APPEALS from a judgment of the circuit court for Sauk county: E. RAY STEVENS, Circuit Judge. *Affirmed on both appeals.*

The plaintiff, a widow seventy-two years old, on the 28th day of November, 1893, in consideration of support and maintenance, conveyed to her son, *Charles Gall*, her farm in Sauk county, consisting of 120 acres, worth about $1,500, together with personal property thereon of the estimated value of $400. The deed was an absolute conveyance from plaintiff to her son, *Charles Gall*, defendant in this action. The agreement for support and maintenance was in a separate instrument executed at the same time as the deed, and provided that defendant *Charles Gall* should pay yearly to plaintiff twenty bushels of wheat, three hundred pounds of dressed pork, fifty pounds of beef, fifteen bushels of potatoes, feed and pasture for one cow, twelve chickens and feed for same, twelve cords of four-foot hardwood, $20 in cash, and plaintiff also to have the main room and bedroom in the stone house on the premises, defendant *Gall* to furnish medical treatment to plaintiff when sick and good care, and at death to pay $30 for funeral expenses; plaintiff to keep all her household furniture as long as she lived, and defendant *Gall* to have all the rest and resi-

due of the personal property belonging to plaintiff, and was also to pay $275 to the heirs of plaintiff and the debts on personal property up to November 28, 1893. These instruments were recorded in the office of the register of deeds for Sauk county, the deed on the 1st day of December, 1893, and the agreement, which was executed in the presence of witnesses but not acknowledged and gave no description of the land, on the 23d day of April, 1904.

In December, 1901, suit was brought by plaintiff against defendant *Gall* on account of alleged breaches of this agreement in failure to furnish annually the money and property agreed to be delivered to her before December, 1901, and judgment rendered for plaintiff, affirmed by this court on appeal. *Gall v. Gall,* 120 Wis. 270, 97 N. W. 938.

At the time of the conveyance of the farm to defendant *Gall* there was a mortgage of $600 thereon. On October 10, 1901, defendant *Gall* and wife made a lease to La Rue and Grotophorst of the premises, with privilege of exploration for iron ore and with option to purchase for $12,000; defendant *Gall* agreeing, on payment of said sum, to convey title to them by good and sufficient warranty deed. Afterwards the interest of La Rue and Grotophorst was, for value, assigned to defendant Sauk County Land & Mining Company, and thereafter the Sauk County Land & Mining Company leased the premises to defendant *M. L. Patterson,* granting to him the right to prospect on the premises for iron ore, and he thereafter assigned to the Patterson Iron Mining Company his rights, which latter company went upon the premises and expended considerable money in developing the property, and in 1903 discovered thereon bodies of valuable iron ore. In August, 1903, defendant *Gall* and wife, under the agreement entered into to sell said premises, executed a warranty deed of the same to the Sauk County Land & Mining Company, and delivered it to the Bank of Baraboo to be held in escrow until payment to said bank by the Sauk County Land & Mining

Company of the sum of $11,850, balance of purchase price, which payment was to be made by October 10, 1905. After the conveyance to defendant *Gall* he took up the $600 mortgage on the premises and gave a new one to Mrs. Gattiker for about $1,300, and afterwards, and in February, 1904, took up the Gattiker mortgage and executed a new one to defendant *M. L. Patterson* for $2,500.

This action was commenced in August, 1904, against defendants *Charles Gall* and the Sauk County Land & Mining Company to set aside and rescind deed from plaintiff to *Charles Gall,* and for an accounting and general relief, and afterwards, upon application of defendant *Gall, M. L. Patterson* and Patterson Iron Mining Company were made parties defendant; the complaint alleging that they claimed some interest in the premises. The defendants answered separately; the answer of *Patterson* alleging defective description in his mortgage, and setting up that he held under his mortgage without knowledge of any claim of the plaintiff to the premises described in the complaint.

The court found that the agreement to support and maintain, which was the consideration of the conveyance, had been breached before December, 1901, and that plaintiff was obliged to resort to the courts to compel defendant *Charles Gall* to perform, and that breaches had been committed since December, 1901, and that because of such breaches plaintiff had been obliged to abandon her home and rely upon others for shelter, care, and support; that defendant *Gall* had contracted to sell the premises and deliver a deed in escrow; that the objects sought to be secured by the contract between plaintiff and defendant *Gall* could not be secured by further continuance of the same; that defendant *M. L. Patterson,* when he took the $2,500 mortgage, had notice of the plaintiff's rights in the premises.

The court stated the account between plaintiff and defendant *Gall,* and found that the deed and contract should be re-

scinded and set aside, and that the rescission be subject to the rights of the defendants Patterson Iron Mining Company and Sauk County Land & Mining Company, and that, on compliance with the option, the Sauk County Land & Mining Company have title to the premises under the order of the court, and that the balance of the consideration under the option, $11,850, be paid into court during the option period for the benefit of the parties entitled thereto, and that the mistake in the *Patterson* mortgage be corrected and such mortgage remain an absolute lien against the land for the sum of $630, and the balance of his mortgage interest be a lien upon and payable out of any money which should be due defendant *Gall,* subject to the plaintiff's judgment for costs. The defendant *Charles Gall* appealed from the whole judgment, and defendant *M. L. Patterson* from the portion respecting his mortgage lien.

For the appellants there were briefs by *Grotophorst, Evans & Thomas,* and oral argument by *E. O. Evans.*

For the respondent there were briefs by *Stone & Malone,* and oral argument by *J. A. Stone* and *J. A. Malone.*

KERWIN, J. The main questions in controversy on *Gall's* appeal are, first, whether the suit for breach of contract commenced in December, 1901, by plaintiff, and her subsequent action in accepting and receiving benefits under the contract, amounted to an election of remedies on her part so as to bar the present suit; and, second, If such was not an election of remedies, do the findings of fact warrant the judgment, and are they sustained by the evidence?

1. The conveyance of the premises in question by plaintiff to defendant *Charles Gall,* in consideration of support, maintenance, medical treatment, good care, and a home upon the premises conveyed, created an estate upon condition subsequent, subject to be defeated upon the nonperformance of such condition. *Glocke v. Glocke,* 113 Wis. 303, 89 N. W.

118. This doctrine is well established by the authorities and not seriously disputed by counsel for appellant. It is insisted, however, that the commencement of the action at law in December, 1901, to recover damages on account of failure to make payments annually as agreed prior to December, 1901, and the prosecution of such action to judgment by plaintiff, as well as the receipt by her of payments under the contract subsequent to December, 1901, amounted to an election of remedies by plaintiff, and that she could not thereafter maintain a suit in equity to rescind the contract. The action at law commenced in December, 1901, was for prior breaches on account of failure to make annual payments in money and property as provided in the contract for the support and maintenance of the plaintiff. Such breaches constituted a separate cause of action. The action at law which went to judgment in favor of the plaintiff and which was affirmed by this court (*Gall v. Gall,* 120 Wis. 270, 97 N. W. 938) covered breaches prior to the commencement thereof, and for such the plaintiff had the right to rescind or sue for damages. She had the same right of redress for subsequent breaches. The fact that she was compelled to sue for the recovery of annual instalments falling due before December, 1901, affords no grounds for holding that for subsequent breaches she could not rescind. The doctrine of election of remedies prohibits one from intentionally taking different and inconsistent positions to the detriment of his adversary. 2 Van Fleet, Former Adj. § 436. The subject has been often and fully discussed by this court. Many of the cases are referred to by counsel for appellant as authority for his position, but it will be seen that in these cases the causes of action between which choice could be made existed at the time of election and were inconsistent. Hence the choice of one barred the right to afterwards pursue the other. *Barth v. Loeffelholtz,* 108 Wis. 562, 568, 84 N. W. 846; *Carroll v. Fethers,* 102 Wis. 436, 78 N. W. 604; *Rowell v. Smith,* 123 Wis. 510, 102 N. W. 1. There is nothing in

the present suit inconsistent with the former. It is based upon a separate cause of action accruing subsequent to the commencement of the former action and perfectly consistent with the agreement upon which the first action was based.

But it is claimed that the subsequent breaches upon which the present action rests existed and were known to plaintiff when the former action at law was brought, and that if such action was not an election of remedies, in connection with the subsequent conduct of plaintiff in receiving payment under the contract with knowledge of the facts, it did constitute such election. We are unable to come to this conclusion. The court below found that the previous legal action constituted an election of remedies on the part of plaintiff for any breaches occurring prior to December, 1901, of which she had knowledge, and that in the present action she was left free to prove any breach that occurred subsequent to the commencement of the prior action. The case before us was tried in the court below and determined upon the theory that only breaches subsequent to the commencement of the prior action formed the grounds of judgment, and that substantial breaches occurred after the commencement of the former action. The record in the former action shows that it was brought to recover annual payments due to plaintiff under the contract, and that the question of option on the property was neither litigated nor considered, and it does not appear that it was known to plaintiff at the time. While given in October, 1901, the evidence does not establish that plaintiff had actual knowledge of it, and it was not recorded until January 5, 1903. Nor do we think the acceptance of annual payments made after the commencement of the prior action should in any manner prejudice the plaintiff's rights in the present action. She was entitled to presume after determination of such prior action that the defendant *Gall* would perform on his part, and the fact that she attempted to abide by the contract should not prejudice her rights in the present action on account of subsequent

breaches.    Her patient endurance of the defendant *Gall's* wrongs by repeated breaches certainly cannot operate to bar her right to rescind when such conduct on his part became unendurable.  *Knutson v. Bostrak,* 99 Wis. 469, 75 N. W. 156; *Glocke v. Glocke,* 113 Wis. 303, 89 N. W. 118.

2. It is further contended that the judgment is not supported by the findings, nor the findings by the evidence.  We regard this contention untenable.   The findings fully establish substantial breaches of the contract after the commencement of the former legal action in failure to make the payments and furnish the care and support according to the contract, as well as in contracting to sell the property.  It is said, however, that the option was given October 10, 1901, and that subsequently plaintiff demanded and received payments under the contract and at the first opportunity ratified and approved the option.   But the option was given without her knowledge or consent and was not recorded until January 5, 1903, nor does it appear that plaintiff had actual knowledge of it until about the time of the commencement of the present action. Moreover, the title of record being in defendant *Gall,* and the owners of the option claiming as *bona fide* purchasers in good faith, it was neither necessary nor advisable for plaintiff to enter into a contest with owners of the option.   She had a right to submit to the contract of sale without in any way jeopardizing her own interests.   She was not a party to the deal with them, had no notice of it, and no provision was made, so far as appears from the record, to protect her interest.   If the option were carried out according to the deal without plaintiff's intervention and the purchase price paid to defendant *Gall,* the plaintiff would be deprived of a substantial part of the consideration of the agreement and left without security for the performance of the contract, and no relief except the personal obligation of defendant *Gall.*   Such remedy would clearly be a poor substitute for rescission and restoration to her former rights.   Considerable stress is placed

upon the fact that the findings are based upon what took place before the action at law and not afterwards. Without considering how far the court below was justified in looking into the record on the former trial at law respecting the ill-treatment of plaintiff prior to that suit, we are satisfied that sufficient has been shown to support the findings upon breaches occurring subsequent thereto, and, the trial court having ruled that the instant case must stand upon breaches subsequent to the commencement of the former action, it is obvious that the court in its findings rested the case solely upon such breaches.

It is also argued that the intended sale of the farm was not to relieve the son of further liability to support and care for his aged mother, but to better the condition of both. Yet it does not appear that any provision was made in the option or deed for the mother's security in such improved condition or otherwise, and from past experience, and the existing condition when she began this suit, she had a right to believe that her welfare might not be considered. We do not regard the argument of counsel on this point persuasive, nor do we think the contention that the court must not look at the record on former trial of decided weight, because it was necessary, to some extent at least, to look into it on accounting, if for no other purpose. We are satisfied that the findings support the judgment on the ground of breaches occurring after the former suit, and that such findings are supported by ample evidence independent of the record of the former trial. The evidence shows that there was failure to deliver articles agreed to be furnished annually, besides the evidence concerning substantial breach by the option sale and delivery of the deed in escrow, as well as failure to furnish care and attention clearly contemplated by the contract. The relations existing between mother and son were such as to plainly show that she need expect no care or attention such as should be furnished under the contract. Nor does it appear that plaintiff was responsible for the breaches. The son, though bound by contract, if

by no other tie, to care for and minister to the wants of his aged mother, did not speak to her when he met her on the road, and had no dealings of any kind with her after December 3, 1903, and spoke in the most cruel and inhuman manner of her in public.

3. The defendant *Patterson* on his appeal relies upon all questions raised and contested by defendant *Gall,* and in addition thereto makes the following points: First. That the question of plaintiff's equities was not raised by the pleadings. Second. If so raised, defendant *Patterson* had no notice, and, even if he had, still the amount for which his mortgage should constitute a lien was more than $630. On the proposition of notice the amended complaint alleged that defendant *Patterson* had or claimed to have some interest in the premises described in the complaint by reason of certain contract relations entered into with defendant *Gall* and his grantees, and prayed that his rights and interests be adjudged and determined by the court. To this amended complaint *Patterson* answered, setting forth, in effect, that his interest was acquired and held honestly and in good faith, without knowledge of any claim, real or pretended, of the plaintiff to the premises. The question of whether defendant *Patterson* had notice was litigated upon the trial and determined by the court against the contention of said defendant, in connection with the question of the plaintiff's right to rescind. It appears from the record that the defendant *Patterson* was put upon his proof and from the allegations of his answer so understood it. The estate of defendant *Gall,* as alleged in the complaint, was an estate upon condition subsequent, subject to be defeated upon nonperformance of the condition. *Glocke v. Glocke,* 113 Wis. 303, 89 N. W. 118. The claim of defendant *Patterson* was litigated upon the theory that he had no notice of the equities of the plaintiff, and we think the allegations of the complaint and answer sufficient to raise that issue.

But it is urged that the evidence is not sufficient to charge defendant *Patterson* with notice of the plaintiff's equities. The court below found that he had notice, and we think there is no such preponderance of the evidence against this finding as would justify us in disturbing it. There is evidence that *Patterson* knew before he took the mortgage in question that plaintiff had a room reserved in the house, and says he knew she had some rights or interest in the place. He also knew that part of the money raised by this mortgage went to pay a judgment growing out of the litigation between plaintiff and defendant *Gall,* besides other evidence tending to show notice unnecessary to detail.

It is further urged by counsel that, even had *Patterson* known of the agreement existing between defendant *Gall* and plaintiff, his security could not be impaired unless he knew that the agreement was broken and that plaintiff had reason or grounds for bringing the suit to set aside the deed. This contention cannot be sustained. If defendant *Patterson* knew of the agreement, he knew, or was bound to know, that defendant *Gall* had only an estate upon condition subsequent, and that he could get no greater interest through his mortgage than defendant *Gall* had, and that, whenever *Gall's* estate was defeated for condition broken, plaintiff became repossessed of her former estate. *Glocke v. Glocke,* 113 Wis. 303, 89 N. W. 118. Upon accounting defendant *Gall* was allowed all claims paid under his agreement with plaintiff, and also interest on the mortgage debt existing at the time of the execution of the deed by plaintiff to him, together with the value of the improvements made upon the premises, and defendant *Patterson* by the judgment was given an absolute lien for $630, amount of the lien existing under the prior mortgages, and, in addition thereto, the balance of his mortgage interest was made a lien upon the premises for the amount found due defendant *Gall* on accounting, subject to the plaintiff's costs in the present action. Defendant *Patterson,* therefore, has no cause for

complaint. We think the findings of the court below are sustained by the evidence and support the judgment, and that the judgment should be affirmed.

*By the Court.*—Judgment affirmed on both appeals.