Mootz and wife, Appellants, vs. Petraschefski and wife,
Respondents.

*December 1—December 15, 1908.*

*Vendor and purchaser: Contract for support: Construction: Condi-
tion subsequent: Counterclaim: Equitable relief: Specific per-
formance: Necessary parties: Rescission by vendor: Improve-
ments by vendee: Measure of values.*

1. A contract under which defendants deeded farm lands to plaint-
iffs in consideration of support provided, among other things,
that the defendants should have three rooms in the house with
plaintiffs on the farm, but, in case they should desire to live
with one of their other children, articles required to be deliv-
ered to defendants under the contract were to be delivered at
the abode of the defendants, which should not be more than
twenty miles from the farm, and, "should the parties concerned

not agree," then the plaintiffs should pay the defendants $1,000 "and be released from all other obligations." *Held*, in view of the close connection between the provision relating to the payment of the $1,000 and the language respecting failure to agree, that the idea of payment was coupled with the failure to agree after removal from the farm and the new conditions arising after the defendants had gone to live with other children, and hence the right to pay and be released arose only under such circumstances. KERWIN, TIMLIN, and BARNES, JJ., dissenting, are of the opinion that any failure to agree, whether the defendants remained under the plaintiffs' roof or not, entitled the plaintiffs to pay the $1,000 and be released from all further obligations to the defendants.

2. In such case, plaintiffs having breached the contract before they commenced the instant action for leave to pay into court the $1,000 and for judgment declaring the contract satisfied, the defendants' right to rescission was complete and they were entitled to enforce such right under their counterclaim.

3. Under such contract plaintiffs having also agreed to pay to a daughter of defendants, upon her arriving at the age of eighteen years, $450, it is *held* that the daughter should have been made a party and permitted to defend, so that she might be bound by the judgment.

4. Where, pending a contract for support in consideration of a conveyance of lands, the vendee made permanent improvements with the vendor's consent, on rescission of the contract on account of the vendor's breach of a condition subsequent the vendee is entitled to be allowed the ascertained reasonable value of the improvements, not exceeding the actual cost.

APPEAL from a judgment of the municipal court of Marathon county: LOUIS MARCHETTI, Judge. *Reversed.*

The defendant *Carolina* is the wife of defendant *Friedrich Petraschefski,* and plaintiff *Lydia* is the wife of plaintiff *Otto Mootz* and daughter of defendants. On the 29th day of February, 1904, plaintiffs and defendants entered into the following agreement:

"Articles of agreement and entered into this twenty-ninth (29th) day of February, A. D. 1904, by and between *Friedrich Petraschefski* and *Carolina Petraschefski* (his wife), of the town of Hamburg, in the county of Marathon, and state of Wisconsin, parties of the first, and *Otto Mootz* and

*Lydia Mootz* (his wife), parties of the second part, of the same town, county, and state aforesaid, witnesseth: That the parties of the first part, for and in consideration of the covenants and agreements on the part of the party of the second part, hereinafter named, do hereby agree to transfer their right, title, and interest in and to the following described piece of land, to wit: The west one-half (W. $\frac{1}{2}$) of the southwest quarter (S. W. $\frac{1}{4}$) of section number four (4), in township number thirty (30) north, of range number five (5) east, said to contain eighty (80) acres of land according to the United States government survey, be the same more or less, situated in the county of Marathon and state of Wisconsin. And said parties of the first part have this day, in pursuance thereof, signed and transferred the above described piece of land to the said parties of the second part, by warranty deed, and in further consideration for the covenants and agreements on the part of the parties of the second part, hereinafter mentioned, said parties of the first part agree to turn over and deliver to the party of the second part all their personal property, including horses, cattle, and tools and agricultural implements, excepting their household effects, two cows, and two sheep, which they reserve only as long as they live for themselves as long as either of the parties of the first part shall live.

"In consideration whereof, the said parties of the second part hereby agree to deliver for the use of the said parties of the first part annually at such times as demanded or set forth herein, the following named articles, pay the following named sums annually and otherwise designated, and assume to said first parties all the obligations hereinafter named, to wit: Said party of the second part is to pay annually to the parties of the first party thirty (30) dollars cash and furnish them thirty (30) bushels of good sound potatoes, two hundred (200) pounds of good young pork, one hundred (100) pounds of good young beef, three (3) barrels good wheat flour, three (3) dozen of good fresh eggs per week from the first (1st) day of March until the fifteenth (15th) day of November in each year, also to allow them the use of one half ($\frac{1}{2}$) acre of land manured, plowed, dragged, and prepared ready for planting a garden for their use annually, to feed and keep for them two (2) cows, and two sheep (2),

and their wool annually, and in case of sickness the party of the second part must see that the cows are properly fed and milked and the milk brought into the house where the party of the first part live. Also allow them the use of one horse, when they wish to use it, hitch it up ready to get into the vehicle, and also unhitch it and take care of it when they return, also allow them six young cockerels killed and dressed for eating annually, and when we are sick, we must be attended to and cared for, and have our washing done, and also furnish us with sufficient firewood, split and cut ready for the stove.

"It is further agreed that the parties of the second part shall pay our daughter Emma, now Mrs. Wm. Langhoff, the sum of four hundred and fifty ($450) dollars, and when our daughter Otilia becomes eighteen years of age the parties of the second part are to pay her four hundred and fifty ($450) dollars, and if they cannot then pay it they must pay her interest at the rate of five (5) per cent. per annum until paid.

"It is further agreed to and by both parties that the parties of the first part shall have the use of three (3) rooms in a house upon the farm to live in as long as they live, and in case they ever should decide to live with one of their other children then the party of the second part is to deliver the foregoing mentioned articles to their abode, but not over twenty miles away from the said farm. Should the parties concerned not agree, then the parties of the second part shall pay the parties of the first part one thousand (1,000) dollars, and be released from all other obligations. In case of death the party of the second part must give the parties of the first part a good religious burial under the rites of the Lutheran church, under the custom of the community.

"And it is also agreed by both parties that the hereby assigned and set over farm cannot be sold during their natural lives without the consent of the parties of the first part. And as security for the faithful performance of each and all the agreements and covenants on the part of the parties of the second part towards said parties of the first part, said first parties shall have a lien upon the premises conveyed by said parties of the first part to said parties of the second part.

"In witness whereof the said parties have hereunto set their hands and seals this 29th day of February, A. D. 1904.

"FRIEDRICH ⨯ PETRASCHEFSKY.     [Seal.]
      his / mark

"KAROLINA  PETRASCHEFSKY.     [Seal.]

"OTTO MOOTZ.     [Seal.]

"LYDIA MOOTZ.     [Seal.]

"In presence of

"Henry E. Voight.

"Christ F. Schmidt.

"State of Wisconsin,  } ss.
"Marathon County.

"On this 29th day of February, A. D. 1904, personally appeared before me the within named *Friedrich Petraschef-sky* and *Karolina Petraschefsky,* his wife, and *Otto Mootz* and *Lydia Mootz,* his wife, to me known to be the persons who signed the within agreement, and acknowledged the same to be their own deed and act for the uses and purposes therein mentioned.          HENRY E. VOIGHT, Notary Public.

"(N. B.) Residing in Hamburg, Marathon Co., Wis.

"[Seal.] My commission expires June 4, 1905.

"Recorded Mar. 3, A. D. 1904, at 2 p. m., volume 98 of Deeds, page 34.          EDW. C. KRETLOW, Register."

On or about June, 1907, this action was commenced. The complaint alleges that pursuant to the agreement heretofore set forth the deed of the premises was executed and delivered and that plaintiffs went into possession of the premises and paid Mrs. Langhoff $450 specified in the agreement, and erected on the premises a house costing to exceed $1,500, and gave the defendants rooms therein which they occupied, and made other valuable improvements, and that they complied in all respects with the terms of the contract, and that ever since the spring of 1906 it has been impossible for the parties to agree, owing entirely to the defendants; that before the commencement of this action plaintiffs offered to pay defendants and tendered them $1,000 in satisfaction of the agreement, and ever since have been ready and willing

to pay said sum to the defendants, and, in addition to said $1,000, are willing to pay Otilia Petraschefski $450. Plaintiffs demand judgment that they be permitted to pay $1,000 into court for defendants, and that the agreement be declared satisfied except the payment of $450 to Otilia, and that the agreement be canceled except as to said $450, and the title to the land adjudged in plaintiffs subject to a lien of $450. The defendants answered, admitted the relationship of the parties, the execution of the agreement, that plaintiffs went into possession under the agreement, and the payment of $450 to Mrs. Langhoff, and denied the other allegations of the complaint. Defendants also set up a counterclaim, alleging breach of the contract on the part of plaintiffs, and demand judgment dismissing the complaint and that they have judgment upon the counterclaim rescinding and canceling the deed, and that the property be restored to them and their title established free and clear of any right or claim of the plaintiffs.

The action was tried by the court, and the court found, in substance, the execution of the agreement and conveyance of the property to plaintiffs, and further found that:

"By the terms of said agreement it was provided that, if the parties to the contract could not agree, the plaintiffs should pay to the defendants the sum of $1,000 and be released from all other obligations. And this sum of $1,000 was tendered by the plaintiffs to the defendants in March, 1907, and prior to the commencement of this action. Since the making of said contract and prior to the commencement of this action the plaintiffs cut from the premises so conveyed to them by the defendants certain timber and removed and sold the same, the value of which, after deducting the cost of the labor of the plaintiffs thereon, was $200, for which the plaintiffs are liable and should be charged as waste. During the occupancy of said farm by the plaintiffs they built upon the same a dwelling house of the reasonable value of $1,150. Prior to the commencement of this action and prior to the tender of the $1,000 set forth in finding 3,

the plaintiffs at various times violated the obligation of their said contract with the defendants to treat the defendants with the consideration and forbearance due from children to parents, by neglecting to give to the defendant *Carolina Petraschefski,* the mother of the plaintiff *Lydia Mootz,* proper nursing and care or any nursing and care whatsoever whilst she was sick on two occasions, and by the refusal of said plaintiff *Lydia Mootz* to speak to said defendant, her mother, for a long period, causing said defendant much mental pain and grief, and by an assault by the plaintiff *Otto Mootz,* whilst in an intoxicated condition, upon the defendant *Friedrich Petraschefski* in the rooms belonging to said defendants, and in the nighttime, in which said plaintiff used violent, abusive, and threatening language towards the said defendant, which assault greatly disturbed and alarmed the defendants, and especially the defendant *Carolina Petraschefski.* On said occasion also said plaintiff *Otto Mootz* demanded that the defendants leave the place. The personal property delivered by the defendants to the plaintiffs has been converted by the plaintiffs to their own use, so that it cannot be returned to the defendants, and the value of the same, which is $450, offsets and counterbalances the payment of $450 made by the plaintiffs to Mrs. William Langhoff. The difference between the value of the house constructed by the plaintiffs upon said premises and the waste of said premises for which they are chargeable and plaintiffs' use of the farm is $950, for which the defendants are justly chargeable and liable to plaintiffs."

As conclusions of law the court found that:

"By the violation of the condition subsequent, set forth in findings 1 and 6, of the deed from the defendants to the plaintiffs of the premises described in finding 1, the title to said premises so conveyed was diverted from the plaintiffs and reverted to the defendants. The defendants are entitled to a decree declaring the contract and deed set forth in finding 1 to be set aside and canceled, and adjudging the title of said real estate to be in the defendants free and clear of any claim, right, or title of the plaintiffs in the same and dismissing the action of the plaintiffs. Said judgment shall provide for the payment to the plaintiffs by the defendants

of the sum of $950 within sixty days from the date of said judgment, and that such sum and judgment shall remain and constitute a lien upon the real estate described in finding 1 until the same is paid."

Judgment was entered adjudging the defendant *Friedrich Petraschefski* the owner of the land and premises in question and also adjudging the contract void; and further, that the defendants pay the plaintiffs $950 within sixty days from the date of entry of judgment and that plaintiffs have a lien upon the premises for said sum, and their action against defendants be dismissed with costs. Plaintiffs appealed from this judgment.

*John Van Hecke,* for the appellants.

For the respondents there was a brief by *Brown, Pradt, Genrich & Anderson,* and oral argument by *F. W. Genrich.*

KERWIN, J.    This action was brought upon the theory that in case the parties failed to agree the plaintiffs might pay $1,000 and be released from all obligations under the contract, except the payment to Otilia Petraschefski of $450, the $450 provided for Mrs. Langhoff having been paid by plaintiffs before the action was commenced. The contention of the parties involves the construction of the agreement set up in the statement of facts. The court found failure to agree, and also that prior to the commencement of the action and the tender of the $1,000 the plaintiffs at various times violated the obligations of the contract by failing to furnish nursing and care and otherwise. These findings, we think, are supported by the evidence. The question therefore arises whether the breach was a breach of a condition subsequent which entitles the defendants to rescind and re-enter for condition broken and thereby become repossessed of their former estate, under the rule of *Glocke v. Glocke,* 113 Wis. 303, 89 N. W. 118; *Wanner v. Wanner,* 115 Wis. 196, 91 N. W. 671; *Krause v. Krause,* 125 Wis. 337, 104 N. W. 76; *Gall v.*

*Gall,* 126 Wis. 390, 105 N. W. 953.   It is the opinion of
Justices TIMLIN, BARNES, and the writer that the doctrine of
the foregoing cases does not apply to the instant case, but that
any failure to agree, whether defendants remained under the
plaintiffs' roof or not, entitled plaintiffs to pay $1,000 and be
released from all further obligations to the defendants.   The
majority of the court, however, think otherwise.   The ques-
tion turns upon the intention of the parties as gathered from
the contract.   What the intention was depends upon the
construction of the contract and whether it is capable of an
interpretation which will bring the case within the rule of the
cases heretofore cited.   The contract provides that the de-
fendants shall have the use of three rooms in the house with
plaintiffs upon the farm, but, in case they should desire to
live with one of their other children, in such event the articles
to be delivered under the contract were to be delivered at the
abode of the defendants, which should not be more than
twenty miles from the farm, and, "should the parties con-
cerned not agree, then the parties of the second part shall pay
the parties of the first part one thousand dollars and be re-
leased from all other obligations."   It is considered by the
court that, in view of the close connection between the pro-
vision to pay $1,000 and the language respecting failure to
agree, the idea of payment is coupled with the failure to
agree after removal from the farm and new conditions arising
after the defendants had gone to live with other children,
and that the right to pay and be released should arise only
under such circumstances.   This appears to the court, under
all the provisions of the contract and circumstances surround-
ing the parties at the time of its execution, to be a more rea-
sonable interpretation than that it was intended that while all
the parties were living together under the same roof, and
no decision on the part of the defendants to live elsewhere,
the plaintiffs, in case of disagreement, could tender $1,000
and send the defendants from under their roof.   The court

therefore is of the opinion that the parties to the contract intended that the $1,000 was to be paid in case disagreement occurred after defendants had gone to live elsewhere, and, they not having done so, the right to pay the money and be released never arose.   Besides, the contract does not provide that the money may be paid and plaintiffs released for breach on their part, but only in case of failure to agree.   The plaintiffs having breached the agreement before the commencement of the action, the defendants' right to rescission was complete, and the defendants were entitled to enforce it under their counterclaim.   *Glocke v. Glocke,* 113 Wis. 303, 89 N. W. 118; *Wanner v. Wanner,* 115 Wis. 196, 91 N. W. 671; *Gall v. Gall,* 126 Wis. 390, 105 N. W. 953.

It is further contended that it was error to find the value of the timber cut $200, the value of the house built by plaintiffs $1,150, and in requiring the defendants to pay plaintiffs only $950.   It also appears from the evidence that the plaintiffs made valuable improvements in addition to building the house, principally by way of fences, for which no allowance was made.   It also appears that, in order to determine the rights of all parties, Otilia Petraschefski, daughter of defendants, should have been made a party, since the contract provided that she be paid $450 upon arriving at the age of eighteen years.   *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440.   It is quite clear that the plaintiffs should have been allowed more than $950.   The clear preponderance of the evidence shows that the reasonable cost of the house was more than $1,150; but it would be difficult if not impossible, from the condition of the evidence, to arrive at the reasonable cost, and there is no evidence from which the cost of the fences could be determined.   So, because of the condition of the record, this court cannot finally dispose of the case.

In order to do so, Otilia, daughter of defendants, must be made a party and permitted to defend, so that she may be bound by the judgment, and further testimony taken upon

the accounting, to the end that it may be definitely settled as to the amount which should be charged to plaintiffs for timber cut upon the premises, and the reasonable cost of the house built by plaintiffs on the premises as well as other improvements ascertained, and the amount to be paid by defendants to plaintiffs determined. The improvements having been made by consent of both parties to the contract, in arriving at the amount to be allowed to plaintiffs for such improvements the ordinary rule does not apply, but the reasonable value of the improvements, not exceeding the actual cost, should be ascertained and allowed.

*By the Court.*—The judgment of the court below is reversed, and the action remanded for further proceedings in accordance with this opinion.