### LOUIS K. LIGGETT COMPANY *vs.* HARRY A. WILSON & another.

Suffolk.    March 9, 10, 1916. — June 21, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Landlord and Tenant.    Contract,* Construction.

A lease, manifestly drawn by a person who did not appreciate the meaning of the legal terms that he tried to use, contained the following paragraph: "Conditioned that in case of nonpayment of the rent at the time and in the manner above

provided, or should the Lessee be declared a bankrupt or make an assignment for the benefit of his creditors, or if default shall be made in any of the covenants or agreements herein contained, the said Lessor shall have the right, without notice, to enter the said premises either by force or otherwise, and to again re: possess the same, and to relet the said premises as the agent of the said Lessee, and to receive the rents due by these presents, and holding the said Lessee liable for any deficiency, it being understood that neither this nor any other action on the part of the Lessor shall in any wise deprive said Lessor of its full legal rights against the Lessee because of any unpaid rentals under the terms of this lease." The lessee was declared a bankrupt, and the lessor, to whom the keys of the leased premises were delivered, "took possession of said premises under the terms of said lease." *Held,* that under the true construction of the paragraph quoted above the entry and taking possession by the lessor terminated the lease.

CONTRACT on a contract in writing by which the defendants agreed to guarantee the punctual performance by the Francis Wilson, Inc., a corporation, of all the covenants and agreements of that corporation as the lessee under a lease from the plaintiff dated April 14, 1913, seeking to recover $583.33 with interest thereon from November 30, 1914, as the amount of rent due under that lease for the month of November, 1914. Writ in the Municipal Court of the City of Boston dated December 4, 1914.

In the Municipal Court the trial judge made the findings that are stated in the opinion and the footnotes and made a general finding for the plaintiff in the sum claimed.

At the request of the defendants the judge reported the case to the Appellate Division, who made an order that the report be dismissed. The defendants appealed.

*H. G. Allen & H. W. Conant,* for the defendants, submitted a brief.

*G. G. Bacon,* for the plaintiff.

LORING, J. The lease here in question manifestly is drawn by one who did not appreciate the meaning of the legal terms which he used, or, speaking with more accuracy, which he attempted to use. For the difficulty which we have in construing the lease arises from the fact that the person who drew it did no more than make an attempt at using legal terms. The lease is badly drawn and no construction can be given to it which is not open to question.

Before undertaking to determine the true construction of the lease in question, it is well to have a clear understanding of the clauses found in leases which evidently are the foundation of

the clause here in question and of the purposes for which those clauses are adopted.

Where a lessee becomes bankrupt (or otherwise unable to meet his obligations) unless some clause providing for the contingency is inserted in the lease the lessee continues to be the owner of the term created by the lease and all that the lessor can get is such dividend on the amount of the rent as the bankrupt lessee can pay. To protect the landlord against that contingency it is not uncommon to insert in leases a clause providing (1) that the leasehold estate shall be conditioned upon the lessee not becoming bankrupt (or otherwise unable to pay his debts) and (2) that if the lessee does become bankrupt (or otherwise unable to pay his debts) the lessor may enter and end the leasehold estate for condition broken. If the contingency arises and the lessor does enter and end the leasehold estate, the loss to the lessor mentioned above is avoided.

The terms of the condition authorizing the lessor to re-enter and end the leasehold estate (in case the lessee becomes bankrupt or otherwise unable to pay his debts) usually inserted in leases in this Commonwealth, are in substance these: The lease is made on condition that if the lessee fails to perform any of the covenants or be declared bankrupt or insolvent, or if an assignment be made of the lessee's property, or if this leasehold interest shall be taken on execution, then the lessor or lessors may "terminate this lease, enter upon the said premises and, expelling the Lessee and removing its effects (forcibly if necessary), without being deemed guilty of any manner of trespass, and without prejudice to any rights or remedies hereunder, repossess the same as of his or their former estate." This, for example, was the form of the right of re-entry in the lease in question in *Woodbury* v. *Sparrell Print*, 187 Mass. 426, and in the lease in question in *Cotting* v. *Hooper, Lewis & Co. Inc.* 220 Mass. 273.

But it was found in practice that when a lessor to protect himself against this loss was forced to enter and end the leasehold estate, he might not be able to let the estate for as large a rent as that reserved in the lease and so lost the benefit of the bargain which the lease gave him. In recent years it has been not uncommon for parties to insert in leases a clause to protect the landlord against the loss of his bargain under such circumstances. For

example: In the lease in question in *Woodbury* v. *Sparrell Print, ubi supra,* it was provided that on such termination of the lease: "The Lessee shall be liable to the Lessor for all loss and damage sustained by the Lessors on account of the premises remaining unleased, or being let for the remainder of the term for a less rent than that herein reserved." Another covenant to protect the landlord in such a contingency is that found in the lease in question in *Cotting* v. *Hooper, Lewis & Co. Inc., ubi supra.* The covenant in that case was that the lessee would indemnify the lessor (as in *Woodbury* v. *Sparrell Print, ubi supra*) "or, at the election of the Lessors the Lessee will, upon such termination, pay to the Lessors as damages, such sum as at the time of such termination represents the difference between the rental value of the premises for the remainder of the said term and the rent and other payments herein named." A third covenant of this kind is that found in the lease in question in *Weeks* v. *International Trust Co.* 125 Fed. Rep. 370. The clause in the lease in question in that case required the lessee to pay to the lessor, during the term for which the lease originally was to have run, the difference between the rent reserved in the lease and the amount received by the lessor on reletting the premises at the lessee's risk.

In the case at bar the trial judge found that on the keys being delivered to the lessor on or about November 18, 1914, he "took possession of said premises under the terms of said lease."

The plaintiff's contention is that by taking possession on November 18 under the terms of the lease he did not terminate the leasehold estate created by the lease.

In support of this contention he argues that the provision found in the clause of the lease here in question * does not provide in

---

* "Conditioned that in case of nonpayment of the rent at the time and in the manner above provided, or should the Lessee be declared a bankrupt or make an assignment for the benefit of his creditors, or if default shall be made in any of the covenants or agreements herein contained, the said Lessor shall have the right, without notice, to enter the said premises either by force or otherwise, and to again repossess the same, and to relet the said premises as the agent of the said Lessee, and to receive the rents due by these presents, and holding the said Lessee liable for any deficiency, it being understood that neither this nor any other action on the part of the Lessor shall in any wise deprive said Lessor of its full legal rights against the Lessee because of any unpaid rentals under the terms of this lease."

terms that upon the lessor entering the term shall come to an end. Nor that when he does "repossess the same" he shall repossess the same as of his former estate. On the contrary it provides that upon repossessing the same he should have the right "to relet the said premises as the agent of the said Lessee, and to receive the rents due by these presents" and after that it is provided, "it being understood that neither this nor any other action on the part of the Lessor shall in any wise deprive said Lessor of its full legal rights against the Lessee because of any unpaid rentals under the terms of this lease."

We do not think that the last clause is important. It is usual to insert such a clause in leases to make sure as a matter of precaution that when a lessor enters and terminates a lease he does not lose his right to the rents which had theretofore accrued. In the lease in question in *Cotting* v. *Hooper, Lewis & Co. Inc., ubi supra,* the clause inserted for that purpose was, "without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant." Seemingly this clause was taken from such a clause in leases. We are of opinion that this clause in the lease here in question should not be construed to have any other or different effect.

The objection to the construction urged by the plaintiff is that if it is the true construction of this clause the clause is altogether futile. If all that this clause gives to the lessor is a right (in case the lessee becomes a bankrupt or makes an assignment for the benefit of his creditors, etc.) to take possession of the premises as agent of the lessee and relet them on the lessee's account, it might as well have been left out of the lease. If that is the true construction of the lease, all that the lessor is entitled to, in case he enters under this clause and relets the premises, is to recover what he can for the rent due him from the original lessee. The rents due from the subtenant in such a case would belong to the original lessee and not to the lessor. If the effect of the entry by the lessor does not put an end to the tenant's leasehold estate it is hardly conceivable that the parties would have inserted this clause in the lease. More than that this whole clause begins with the word "Conditioned." It is a clause making the leasehold estate created by the lease a conditional term. It is true that it does not in terms state that the lease shall be terminated if the

condition takes place and an entry is made by the lessor for condition broken. But that goes with the fact that the clause creates a condition. It is also true that this clause provides that the lessor upon entering shall have a right "to again repossess the same." The usual clause as already stated is, that the lessor shall have a right to "repossess the same as of his former estate." It is to be observed that the clause does not provide that the lessor shall have the right to "repossess the same" as agent of the lessee. The right given is to "repossess the same." When the lessor has repossessed the same then he is given the right "to relet the said premises as agent of the said Lessee."

Having in mind the futility of the clause if it is construed as the plaintiff contends, and having in mind that the clause is a clause which made the tenant's leasehold estate a conditional one, we are of opinion that by its true construction when the lessor exercised the right given him of entering and repossessing himself of the same, it must be construed to mean that when the lessor entered under the clause he repossessed himself of the premises as of his former estate.

The other provision to be dealt with in construing this clause of the lease is the provision that upon entering the lessor shall have a right "to relet the said premises as the agent of said Lessee, and to receive the rents due by these presents, and holding the said Lessee liable for any deficiency." On its face this would seem to be a clause like that in *Weeks* v. *International Trust Co., ubi supra,* and to provide that each month during the remainder of the term which would otherwise have continued in existence, the lessor may recover from the lessee the difference between the amount named as rent in the lease and the sum for which the premises have been let at the lessee's risk for that month.

Apparently the defendants, who guaranteed the due performance of the covenants and agreements of the lease, are pecuniarily able to respond, and for that reason it is now for the interest of the plaintiff in the case at bar to contend that the lease here in question has not come to an end. But that was not the situation when the lease was made. If that had been the situation at that time there would have been no occasion for inserting in the lease the clause here in question. More than that, if the lessor had been content to rely solely on the responsibility of the guarantors when

the lessee made an assignment for the benefit of its creditors, it would not have entered under this clause of the lease. It is manifest that this clause was inserted in the lease and the entry under it was made by the lessor (the plaintiff) to obtain security in addition to that given by the defendants' guaranty. The lease and the plaintiff's action must be construed in the light of the events which obtained when the lease was drawn and the entry was made.

We are of opinion that the leasehold estate came to an end when the keys were delivered to the lessor on November 18, 1914. It follows that the plaintiff was not entitled to recover rent for the month of November. The declaration in the case at bar is a declaration to recover rent and not a declaration to recover a sum of money equal in amount to the rent less such sum as the lessor had received on reletting the premises.

The whole lease is not before us. We do not know whether it contains a covenant which would enable the lessor to recover rent for the portion of the month of November which had expired before the keys were surrendered on November 18. This question was not dealt with at the argument. Under these circumstances we are of opinion that the case should stand for further proceedings in the Municipal Court in spite of the finding made by the trial judge,* which would seem to justify a recovery under some form of pleading of the sum found to be due.

The entry must be: Order dismissing appeal must be reversed. The case to stand for further proceedings in the Municipal Court.

*So ordered.*

---

* The judge found: "4. That Louis K. Liggett Company, the Lessor, after having re-possessed the premises on or about November 18, 1914, has made reasonable effort in the interest of the Lessee as well as its own, to obtain a new tenant and has to date been unsuccessful."