TOWLE et al. v. PULLEN et al.

(Circuit Court of Appeals, Seventh Circuit. August 29, 1916. On Petition for Rehearing, December 4, 1916.)

No. 2344.

1. PARTITION ⚖➔39—SUIT—FORFEITURE.
As the Illinois statutes require complainants in a partition suit to make all parties defendant who have any interest or alleged interest in the land in controversy, defendants, who were joined and claimed a leasehold in the property sought to be partitioned, cannot defeat partition on the ground that, as complainants asserted their leasehold had been forfeited for nonperformance of covenants, the suit was one to enforce a forfeiture; for equity, having taken jurisdiction of the proceeding for partition, could dispose of that portion of the suit involving the forfeiture.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 93–96; Dec. Dig. ⚖➔39.]

2. LANDLORD AND TENANT ⚖➔157(1)—CONDITIONS—WAIVER OF CONDITIONS.
Where a lease, which reserved an annual rental of $3,000, required the lessees to erect before 1893 a temporary building on the demised premises, costing not less than $7,000, and to erect a permanent building by 1898, costing not less than $50,000, and the two covenants were wholly separate, the lessor being given different remedies for breach, the fact that the lessor received rent after 1898, though the lessee had not complied with the building covenant, does not establish a waiver precluding the lessor from subsequenty asserting a forfeiture on the lessee's failure, after notice pursuant to the lease, to erect the permanent building according to the covenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572; Dec. Dig. ⚖➔157(1).]

3. LANDLORD AND TENANT ⚖➔157(1)—COVENANTS—ENFORCEMENT—LACHES.
In such case, where the building covenant provided that, in event of failure, the lessors might declare forfeiture at any time upon the lessees' failure to comply therewith after having received 90 days' notice, the fact that the lessors delayed demanding enforcement for nearly 15 years does not show that the lessors were guilty of laches precluding subsequent enforcement, particularly where the demised premises did not at the outset show such availability for renting purposes as was contemplated.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572; Dec. Dig. ⚖➔157(1).]

4. LANDLORD AND TENANT ⚖➔157(1)—COVENANTS—INSISTENCE UPON ESTOPPEL.
In such case, notwithstanding the lessors for a considerable time did not demand the full amount of the reserved rent, they are not estopped from subsequently insisting upon performance of the building covenant; the tenant having been in no wise injured by delay, not having changed his position after erecting the first temporary building.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 571, 572; Dec. Dig. ⚖➔157(1).]

On Petition for Rehearing.

5. APPEAL AND ERROR ⚖➔169—REVIEW—PRESENTATION OF GROUNDS IN COURT BELOW.
A contention not urged in the trial court cannot be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1018–1034; Dec. Dig. ⚖➔169.]

⚖➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. LANDLORD AND TENANT ☞94(3)—LEASES—TERMINATION.

Where lessees breached a covenant entitling the lessors to terminate, notice to terminate is sufficient, though not signed by one of the lessors, who was also a lessee, for any other rule would render the lessors powerless to enforce a compliance with the covenant.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 318–319; Dec. Dig. ☞94(3).]

7. LANDLORD AND TENANT ☞152(3)—COVENANTS—CONDITIONS.

Where a lease reserving an annual rental required the lessees to erect before the year 1893 a temporary building on the demised premises, costing not less than $7,000, and to erect a permanent building by 1898 costing not less than $50,000, which building should be maintained, the lessor being entitled in case of default in such covenant to terminate the lease, should the default continue 90 days after notice, the provisions for a building and the maintenance of the same, as well as the clause protecting the lessor, constitute a continuing obligation.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 540, 547, 551; Dec. Dig. ☞152(3).]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bill by George Pullen and Mary F. Antes, as surviving trustees under the will of Lloyd T. Pullen, deceased, and others, against John R. Towle and others. From decree for complainants, defendants appeal. Affirmed.

Appellees, being the plaintiffs in the court below and herein so termed, brought this action against the appellants, herein termed the defendants, to secure a partition of land of which they were part owners and to remove as a cloud upon the title a certain outstanding and recorded lease which it was claimed had been terminated by prior notice for breach of its conditions. From a decree entered in accordance with the prayer of the complainants' bill, defendants appeal.

The chief controversy in this court arises over that portion of the decree which adjudged the lease to be terminated.

On December 12, 1892, the then owners of the land in controversy, being vacant Chicago property, executed a lease to John R. Towle and Herbert A. Morse for 99 years, which lease contained a provision for the erection of a $50,000 building on the lot on or before January 1, 1898. The annual rental was $3,000.

The lease read, in part, as follows:

"Said parties of the second part, in consideration of the granting of this lease, and as security for the payment of the rents herein reserved, and the performance of the covenants and agreements herein contained on their part to be kept and performed, further covenant and agree to cause to be erected upon said demised premises, and to pay therefor so that the same shall be free of all mechanic's liens, on or before the first day of January, in the year 1898, a building covering the entire frontage of said demised premises, having a height of not less than three stories, and costing not less than $50,-000.00, which building shall be completed and ready for occupancy on or before the first day of January in the year 1898.

"And said parties of the second part covenant and agree that they will on or before the first day of May, in the year 1893, expend upon said demised premises in the construction of a temporary building to be erected thereon, covering the whole frontage thereof, not less than $7,000.00."

Instead of erecting a temporary building to cost not less than $7,000, a two-story building, somewhat more permanent in character and costing about $16,000, was erected thereon. The three-story building to cost not less than

$50,000 and to be erected by January 1, 1898, was never placed upon the premises.

The lease further provided as follows:

"It is expressly agreed that no notice or demand shall be necessary in case of default in the payment of rent, but that default for ninety days in the payment of any installment of rent hereunder, shall entitle said lessors to terminate this lease, without any demand therefor or notice to said lessees."

The lease further provided as follows:

"And the said parties of the second part further covenant and agree * * * that * * * if default shall be made in the covenants herein, as to rebuilding, repairing, insuring, or in any of the other covenants herein contained to be kept, observed and performed, by the parties of the second part, or their assigns, and such default shall continue 90 days after notice thereof in writing to the parties of the second part, it shall and may be lawful for the parties of the first part, at their election, to declare the said term ended, etc., etc."

On May 20, 1910, lessors made written demand upon lessees that the building called for in the lease be constructed, and by the same instrument notified lessees that the lease would be terminated if the demand was not complied with, in 90 days. Lessors, on February 29, 1912, notified lessees that they declared the lease terminated and demanded possession of the property. Lessees offered no excuse for their failure to construct the $50,000 building called for in the lease.

Defendants, in seeking to reverse that part of the decree denying to the leaseholders any and all interest in the premises, rely upon waiver, estoppel, and laches. Defendants also contend that the bill should be dismissed because the plaintiffs are asking a court of equity to enforce a forfeiture.

Edwin M. Ashcraft, of Chicago, Ill., for appellants.

Horace Kent Tenney, of Chicago, Ill., and Edgar L. Wood, for appellees.

Before MACK, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge (after stating the facts as above). [1]. Defendants' first contention, that the District Court erred in refusing to dismiss the bill because the plaintiffs in this action sought to enforce a forfeiture in a court of equity, is untenable.

This action is not one to enforce a forfeiture, but is an ordinary partition suit brought by certain landowners against defendants, also landowners, or claiming an interest in the property. The chief purpose of the action being to partition the land or, in case of failure to do so, to sell the property, the court is empowered to fix the rights of the parties interested, as well as those claiming to have an interest therein.

· The statutes of Illinois, like the statutes of nearly all other states, require plaintiffs in a partition action to make all parties defendants, who have any interest or alleged interest in the real estate in controversy, and also empower the court which has jurisdiction of such partition suit to determine the rights and claims of all such parties in and to the real estate. Many questions are thus determined in the ordinary partition action. 30 Cyc. 238.; Rann v. Rann, 95 Ill. 433; Crowley v. Byrne, 71 Wash. 444, 129 Pac. 113.

A court of equity having jurisdiction for the main purpose of the bill will exercise it generally, and will dispose of all questions arising between the parties, whether such questions are legal or equitable. It

might well be said that such jurisdiction of the court of equity to dispose of the legal questions is an incidental one. Courts of equity in actions other than partition suits have frequently determined legal issues, including forfeitures, when such issues were incidental to the determination of the main issue, which was purely equitable. Gunning v. Sorg, 214 Ill. 616, 73 N. E. 870; Pendill v. Union Mining Co., 64 Mich. 172, 31 N. W. 100; Big Six Development Co. v. Mitchell, 138 Fed. 279, 70 C. C. A. 569, 1 L. R. A. (N. S.) 332; Brewster v. Lanyon Zinc. Co., 140 Fed. 803, 72 C. C. A. 213.

[2] Defendants' contention that plaintiffs waived their right to terminate the lease for failure to construct the building by the acceptance of accrued rent after January 1, 1898, is also untenable. The payment of rent was an obligation which the lessees assumed entirely separate and distinct from their obligation to build the three-story building referred to in the lease. The requirement that the lessees construct a permanent building was a continuing obligation. It was inserted for the purpose of furnishing additional security to the landlords. The acceptance of rent would not waive plaintiffs' right to terminate the lease for subsequent failure to comply with the terms of the lease. Mulligan v. Hollingsworth, 99 Fed. (C. C.) 216; Robbins v. Conway, 92 Ill. App. 173; Gluck v. Elkon, 36 Minn. 80, 30 N. W. 446.

The correspondence between the lessees and the representative of the landlords shows conclusively that no waiver was ever intended to result from the acceptance of the rent. On the other hand, the only fair inference that could be drawn from the correspondence was that the right to insist upon the enforcement of the building clause in the lease was at all times recognized by all parties.

[3, 4] Defendants' claims that plaintiffs were guilty of laches, and were estopped to insist upon a forfeiture of the lease for failure to comply with this clause, are without merit. The plaintiffs were not guilty of laches. They may have been overindulgent. But tenants cannot set up such leniency as a bar to the landlord's rights.

No estoppel can result therefrom because the record fails to show any prejudice which the tenants suffered by reason of the landlords' leniency in extending time of payment or in their failure to insist upon an earlier termination of the lease.

The testimony shows that the tenants did not receive in the early nineties the amount of rent that they expected would come from the subleasing of the property. During those years of hardship the landlords temporarily accepted a part of the amount fixed in their lease, instead of the whole thereof. They likewise did not insist upon the prompt expenditure of $50,000 for the construction of the three-storied building. The defendants were certainly not injured by this indulgence. The essential element to make a case of estoppel is lacking.

Moreover, the lease which the parties made did not require landlords to act immediately upon a breach of any of the covenants. An examination of that portion of the lease heretofore quoted clearly indicates that, any time after breach of the covenant to build, the land-

lords might serve demand that the covenant be performed. Failure to comply with this demand within 90 days after such notice authorized the landlords to terminate the lease. Power to avoid termination of the lease therefore rested at all times with the defendants and was not lost or impaired by the plaintiffs' failure to serve the notice at an earlier date.

The defendants also complain because the District Court decreed that the defendant Harriet E. Morse pay to the plaintiffs the sum of $597.25 on an accounting. Harriet E. Morse was interested in the lease and she was also interested in the fee. The amount thus found to be due from Harriet E. Morse on this accounting is supported by the evidence and by admissions made upon the trial.

The decree is affirmed.


## On Petition for Rehearing.

In support of a petition for a rehearing appellants contend that the notice to terminate the lease was not signed by all of the landlords and that as to those not signing there was no desire to terminate it.

[5] This contention was not made in the lower court. The sufficiency of the notice terminating the lease was not disputed. It might well be dismissed under the rule that a question not presented to the lower court will not be considered upon appeal. Morrill v. Jones, 106 U. S. 466, 1 Sup. Ct. 423, 27 L. Ed. 267; Harding v. Giddings, 73 Fed. 335, 19 C. C. A. 508; Adams v. Shirk, 117 Fed. 801, 55 C. C. A. 25.

[6] The legal question thus presented is one for which few precedents may be found. One of the landlords is interested also as a lessee. Evidently she considers her interest under the lease more valuable than her interest as a landlord. In the conflict of interest between the landlords and tenants she has cast her lot with the tenants. If it is necessary that the notice terminating the lease be signed by all the landlords or their duly authorized agent, it will be impossible to terminate this lease unless one of the lessees should sign the notice.

There seems to be a conflict of opinion as to the right of some, but not all, the landlords, joint tenants or tenants in common, to terminate the lease. Supporting the right are: Foa on Landlord and Tenant (4th Ed.) 614; Woodfall on Landlord and Tenant (19th Ed.) 409; Tiffany on Landlord and Tenant, § 198, p. 1438; 1 McAdam on Landlord and Tenant, § 181; 1 Underhill on Landlord and Tenant, § 121; Doe v. Summerset, 1 B. & A. 135; Alford v. Vickery, Carrington & Marshman, 280. Contra: Pickard v. Perley, 45 N. H. 188, 86 Am. Dec. 153; Right v. Cuttall, 5 East, 491; 24 Cyc. 1332.

We conclude that in a case like the present, where one of the landlords secured an interest as lessee and refused to join in the notice of termination, notwithstanding the breach of covenant on the part

of the tenants, such landlord's consent is not necessary to terminate the lease. To hold otherwise would be to create a most intolerable condition. For if a person interested both as a landlord and as a tenant withheld his consent to the termination of a lease the tenancy could be continued indefinitely. Even when the tenants failed to pay rent the tenancy could not be terminated when the lease required a preliminary notice, if the appellants' position is sound.

[7] Appellants also complain of the following language in the opinion filed:

"The requirement that the lessee construct a permanent building was a continuing obligation. It was inserted for the purpose of furnishing additional security to the landlords. The acceptance of rent would not waive the plaintiff's right to terminate the lease for subsequent failure to comply with the terms of the lease."

The above-quoted language, correctly construed and limited, was not erroneous, but, standing by itself, may be subject to criticism. The court intended to express the conclusion that, in view of all the terms of the contract under consideration, which was too long to set forth in extenso, the provision for the erection of a building was a continuing obligation. It would have been more accurate to say that the provision for a building and the maintenance of the same, as well as the clause inserted in the said contract to protect the lessor in his right to insist *at all times* upon the *erection* and *maintenance* of such a building, constituted a continuing obligation. It must be conceded that the provision for the construction of a building in a long-term lease may be so drawn that the court would not hold it to be a continuing obligation. The contract under consideration was not of such a character.

This conclusion having been reached, it was unnecessary to set forth the long correspondence and the other facts which the appellee contends showed that the payment of rent was never intended in the instant case to operate as a waiver of the landlords' right to insist upon the erection of the building. Nor did we consider it necessary to pass upon the appellees' further claim that the money was never paid as rent nor was it paid to the landlords.

No other question is presented that is not fully covered by the former opinion. The petition for a rehearing is denied.