## EMPRESS THEATRE CO. v. HORTON.

(Circuit Court of Appeals, Eighth Circuit. July 15, 1920.)

No. 5543.

1. **Bankruptcy ⬅391(3)—Forfeiture of lease under its terms for bankruptcy of lessee cannot be restrained.**

   Where a lease without rent, granted in consideration of delivery of corporate stock of the lessee, provided for forfeiture of the lease on bankruptcy of the lessee, the trustee in bankruptcy of an assignee of the lease cannot have enforcement of the forfeiture clause enjoined, where there was no showing of fraud or mistake.

2. **Bankruptcy ⬅391(3)—Hardship to bankrupt and creditors because of forfeiture under lease not ground for injunction.**

   The fact that a bankrupt paid $9,000 for the assignment of a lease one year before his bankruptcy, and that his creditors, who advanced the money, would lose it, does not prevent the lessor from exercising its right of forfeiture under the terms of the lease, for bankruptcy of the lessee, where the assignee took the lease with full knowledge of that condition.

**3. Bankruptcy ⊛═468—On reversing injunction against forfeiture of lease for bankruptcy, court can order delivery to lessor, etc.**

The Circuit Court of Appeals, on reversing a decree of the District Court enjoining a lessor from enforcing its right to forfeit the lease for bankruptcy of the lessee, where the trustee had petitioned for determination of rights of parties, can, in order to settle the litigation, direct the trustee to surrender possession of the property to the lessor, determine the date when the lease was terminated by exercise of the lessor's option, and direct the trustee to pay the lessor the reasonable value of the use of the premises since such date.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Petition by W. A. Horton, as trustee in bankruptcy, against the Empress Theatre Company, to restrain it from taking possession of leased premises under the terms of the lease. From a decree granting the injunction prayed for, the Empress Theatre Company appeals. Reversed and remanded, with instructions.

This appeal challenges a decree in equity against a lessor, the respondent below, upon the petition and at the instance of the trustee in bankruptcy of the estate of the lessee, which, in the absence of any mistake or accident, and of any fraud or wrong of the lessor, avoids and perpetually enjoins the performance of the express condition of the lease and the express covenants of the lessee therein, to the effect that in case of the insolvency or bankruptcy of the lessee the lease shall, on the election of the lessor, cease, its term shall end, the lessor may take immediate possession of the leased premises and put out all occupants and possessors thereof, and that no title, right, or interest in the leased premises under the lease shall pass without the consent of the lessor to any trustee in bankruptcy or by judicial process or by operation of law. The premises leased consist of the basement of a theater building in the city of Omaha. The lease was dated April 23, 1914. The Standard Limited, a corporation, was the original lessor, and the Empress Garden, a corporation, was the lessee. The purpose of the Standard Limited, in making the lease was to increase the patronage and business of the theater by securing the operation of a high-class café with special amusement features in this basement. To accomplish this object it took $42,000 of the corporate stock of the Empress Garden for this lease to the latter, and loaned it $80,000 to enable it to fit up the basement. This $42,000 of stock was the only consideration the Standard Limited or its successor in interest, the Empress Theatre Company, a corporation and the respondent here, to which it assigned its lessor interest on November 15, 1914, ever received and that stock became worthless through the insolvency and bankruptcy of the Empress Garden in 1915, and the latter corporation never paid any part of the loan to it of the $80,000, so that in fact neither the original lessor nor the respondent ever obtained anything of value from the Empress Garden for the lease.

At a sale by the trustee in bankruptcy of the estate of the Empress Garden of the lessee interest of that bankrupt corporation, one E. G. McGilton, as trustee of some lienholders, bought and secured an assignment of this lessee interest. Thereafter Philip H. Philbin borrowed $10,000 of Dr. J. T. Dwyer, used $9,000 of it to pay McGilton for his assignment of the lessee interest, and that interest was duly assigned to Philbin with the consent of the respondent on January 3, 1917. Philbin assigned this lease as collateral to secure his debt to Dr. Dwyer immediately after he acquired it.

Turning back, now, to the terms of the lease, it was a conditional lease, and it granted only a conditional term. It provided in its second paragraph that "the party of the second part is to have the use of the said leased premises, rent free, until the expiration of the said term, that is to say, until the 31st day of January, 1928"; but the following conditions and cove-

---

nants demonstrated the fact that it was only on condition that they were complied with and performed that the lessor was to have a lease of these premises for this long term. Thus the lease provided that the leased premises were to be used for restaurant and amusement purposes and that no part thereof should be used for any other or different purpose without the written consent of the lessor. The twelfth paragraph of the lease reads in this way:

"It is agreed that the covenants and agreements herein contained shall pass to and be binding upon the successors and assigns of the parties hereto: Provided, however, that this lease shall not be assigned, nor shall the said premises or any part thereof be sublet by the party of the second part, without the written consent of the party of the first part. No right, title, or interest upon this lease shall pass to any trustee in bankruptcy, or by judicial process, or by operation of law, without the consent of the party of the first part. The bankruptcy or insolvency of the party of the second part, or other tenant who may go into possession of the premises, with the written consent of the party of the first part, shall at the option of the party of the first part, work an immediate forfeit of the lease, and all interest of the party of the second part therein and thereunder, and the failure of the party of the first part to exercise its option and terminate the said lease on account of such bankruptcy or insolvency, in one case, shall not prevent its exercising its option in any subsequent case of like nature."

Observe that while the consent of the respondent to the assignment of the lessee's interest to Philip F. Philbin estopped it from electing to terminate the lease on account of the prior insolvency and bankruptcy of the Empress Garden and the claim of its trustee in bankruptcy to sell it, the last clause of this twelfth paragraph expressly reserves to it the right to exercise its option and election on the occurrence of the subsequent insolvency and bankruptcy of the second bankrupt Philbin. The eleventh paragraph of the lease contains these covenants of the lessee:

"The party of the second part agrees that at the expiration of the term of the lease, or at or upon any earlier termination of the same, in case it should be sooner terminated, it will quietly and peaceably yield up to the party of the first part the possession of the leased premises. * * * It is expressly agreed by and between the parties hereto that, if any condition or agreement herein contained on the part or behalf of the party of the second part be not fully complied with and performed, then and in such case the party of the first part may terminate the lease and retake immediate possession of the premises and property, and put out and remove therefrom any and all persons occupying or in possession of the same."

Philbin acquired the lessee interest in this lease January 3, 1917; he became insolvent early in 1918, and was adjudged a bankrupt on April 23, 1918. W. A. Horton, the petitioner herein, was elected and qualified as his trustee in bankruptcy. The possession of the leased premises was delivered over to this trustee by Philbin, and there that possession still remains. Upon learning of the insolvency and bankruptcy of Philbin, the respondent, the Empress Theatre Company, in due time and form notified Philbin, the trustee in bankruptcy, and the bankruptcy court, that on account of the insolvency and bankruptcy of Philbin it elected to terminate the lease, to end its term, to forfeit it, and to take possession of the leased premises pursuant to the provisions of the lease which have been recited. Thereafter the trustee received an offer of $12,000 for his assignment of the lease, if he had the lawful right to sell and assign it. The respondent demanded the possession of the premises, protested against any sale or assignment of any interest in them, or of the lease by the trustee, and notified those who thought of buying that the trustee had no title or interest to sell. Thereupon the trustee filed and presented a petition to the court below sitting in bankruptcy, in which he set forth his claim to sell the leased premises and to apply the proceeds to the payment of the debt of Philbin to Dr. Dwyer, and the remainder to the payment of Philbin's general creditors, and prayed that the court would take jurisdiction of, determine, and adjudge the claims of the trustee and the respondent respectively to rights and interest in the leased premises under the lease, and that it would finally decree that these leased

premises are the property of the trustee, that the respondent has no right, title, or interest therein, and that it be perpetually enjoined from seeking possession or use thereof, and from in any way interfering with the use, sale, or disposition thereof by the trustee, or by any one purchasing from him. The respondent set forth in its answer its claims to the possession and use of the property under the condition and covenants in the lease. Testimony was taken, and there was a final hearing of the issue by the referee in bankruptcy, and afterwards on a petition for review by the court below, and an order and decree was finally entered by that court against the respondent for the relief prayed by the trustee. From that decree the Empress Theatre Company has appealed.

Anan Raymond, of Omaha, Neb. (Francis A. Brogan, Alfred G. Ellick, and John U. Loomis, all of Omaha, Neb., on the brief), for appellant.

G. L. De Lacy, of Omaha, Neb. (J. A. C. Kennedy, Yale C. Holland, and Charles F. McLaughlin, all of Omaha, Neb., on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and TRIEBER, District Judge.

SANBORN, Circuit Judge (after stating the facts as above). [1] If a lessor, for a gross consideration received by him at the time the lease is made, leases the valuable basement of a city building for a specific use free of subsequent rent for 15 years on the condition that in case of the insolvency or bankruptcy of the lessee, the term of the lease shall, at the election of the lessor, then terminate, the lease shall be forfeited, the lessor may take, and the lessee will deliver back to him, immediate possession of the leased premises, and no right, title, or interest shall pass to the trustee in bankruptcy of the lessor; if the lessee expressly covenants in the lease that, if any condition or agreement in the lease on his part is not fully complied with and performed, the lessor may terminate the lease and retake, and the lessee will deliver to him, immediate possession of the leased premises; if the lessee becomes insolvent and is adjudged bankrupt, if the lessor immediately elects then to terminate the term of the lease, to forfeit it, and to take possession of the premises on account of such insolvency and bankruptcy; if he gives due notice of his election and demands immediate possession of the premises—then may a court of chancery at the instance and on the prayer of the trustee in bankruptcy of the lessee, in the absence of any fraud or wrong of the lessor, and of mistake or accident, decree under the recognized principles and rules of equity jurisprudence that the condition and covenants of the lease recited be avoided and nullified, that the specific or other performance thereof be perpetually enjoined, and that the lessor, without receiving any equitable consideration therefor, be forever deprived of the use and the value of the use of the leased premises from the time of the insolvency and bankruptcy to the end of the 15 years? This is the question which this case presents. The contingencies of the question are the established facts here, and the referee and the District Court have answered it in the affirmative. It seems difficult,

however, to find among the principles and rules of equity any sound basis for this conclusion.

A court of equity may enjoin the performance of and set aside contracts, conditions, and covenants obtained by the fraud, deceit, or wrong of the respondent, but neither the Empress Theatre Company nor its predecessor in interest was guilty of fraud, wrong, or deceit. It may sometimes avoid conditions and covenants for mistake or accident, but there was neither in this case. The condition and covenants of the lease were natural, reasonable, and just. It clearly shows that when it was made the lessor and the lessee contemplated the possible, perhaps the probable, insolvency and bankruptcy of the lessee and of some of its successors in interest during the long 15 years then to come, discussed, carefully considered, and finally contracted and wrote into their lease their agreement what the effect of such insolvency and bankruptcy should be, to wit, the end of the term of the lease, its forfeiture, and the return to the lessor of the leased premises at its election. The basement leased was a valuable property. The purpose the lessor had in making the lease, to secure the operation in this basement of a high-class café with special amusement features, made the solvency of the lessee and hence its continuous operation of the café essential to the accomplishment of this purpose. Its insolvency or bankruptcy, placing the basement in the hands of a trustee for a long time during bankruptcy proceedings, and then sending it to an unknown purchaser, would undoubtedly to a large extent defeat the object of the lessor in making the lease, produce the vacancy or inadequate operation of the proposed café, and result in immeasurable damage to the leased premises and to the value of their use. It was to prevent this contemplated possibility that these parties wrote into their lease the condition and covenant that in case of the insolvency or bankruptcy of the lessee, at the election of the lessor, the term of the lease should end and the leased premises should be returned to the lessor free from the lease.

Nor was this an unconscionable or inequitable agreement. The lessor received and the lessee gave for this lease $42,000 of the corporate stock of the latter. The lessee received and the lessor gave the use of the basement for the term of 15 years on condition that the lessee or its successor in interest, approved by the lessor, remained solvent for 15 years, but that it should be terminable at the option of the lessor at any time within the 15 years when the lessee became insolvent or bankrupt. When the lease was made, the effect of the condition and covenants which the parties undoubtedly then contemplated was that, in case the lessee became insolvent or bankrupt, its $42,000 of stock which the lessor received would be worthless, and it would actually receive nothing for the lessee's use of the premises, the lessee's operation of the café would be so financially disastrous that it would, at its insolvency, have exhausted the lessee's means and rendered it incapable of operating or using the premises as a café, and the lessor would have the right then to end the term of the lease and take back the leased premises. And such was the actual

effect of the condition and covenants of the lease in about a year from the commencement of the lessee's operation under it, when it became insolvent and bankrupt. So it was that each party at the making of the lease foresaw the possibility, perhaps the probability, of the insolvency and bankruptcy of the lessee, agreed that the effect of such insolvency and bankruptcy should be to vest in the lessor the right at its election then to end the term of the lease and take back the premises, and then took its chance of such insolvency and bankruptcy and signed the lease. And, as the condition and covenants under consideration were in the lease, every one who has succeeded to any interest in or lien upon any interest in the lease has taken that interest or lien under and subject to that condition and those covenants, and has taken its or his chance of the insolvency or bankruptcy of the original or successor lessee thereunder.

Nor was there anything in the condition and covenants of this lease evil in itself, or prohibited by law, or contrary to the public policy of state or nation. The condition and covenants were not novel, but common provisions in leases. Conditions and covenants in leases of the same character have been repeatedly considered, and generally, nay almost universally, sustained and enforced, both by courts of equity and courts of law. Kann v. King, 204 U. S. 43, 54, 63, 27 Sup. Ct. 213, 51 L. Ed. 360; In re Georgalas Bros. (D. C.) 245 Fed. 129, 131, 132; Galbraith v. Wood, 124 Minn. 210, 212, 213, 215, 216, 144 N. W. 945, 50 L. R. A. (N. S.) 1034, Ann. Cas. 1915B, 609; In re Frazin, 183 Fed. 28, 29, 105 C. C. A. 320, 321, 33 L. R. A. (N. S.) 745; Lindeke v. Associates Realty Co., 146 Fed. 630, 632, 636, 639, 641, 77 C. C. A. 56, 58, 61, 64, 66; Brewster v. Lanyon Zinc Co., 140 Fed. 801, 813, 815, 816, 817, 818, 72 C. C. A. 213, 225, 227, 228, 229, 230; Towle v. Pullen, 238 Fed. 107, 110, 112, 151 C. C. A. 183, 186, 188; Liggett Co. v. Wilson, 224 Mass. 456, 113 N. E. 184, L. R. A. 1917A, 205; White v. Huber Drug Co., 190 Mich. 212, 157 N. W. 60, 61, 63; Hepp Co. v. Deahl, 53 Colo. 274, 125 Pac. 491; Negaunee Iron Co. v. Iron Cliffs Co., 134 Mich. 264, 96 N. W. 468, 472; Klein v. Insurance Co., 104 U. S. 88, 92, 26 L. Ed. 662; Westbrook v. Schmaus, 51 Kan. 558, 559, 560, 33 Pac. 306.

In Kann v. King, 204 U. S. 43, 57, 27 Sup. Ct. 213, 51 L. Ed. 360, the lessee in a lease, whereby she was bound to pay the taxes every year, and the right of the lessee to terminate the lease and re-enter for breach of any of the conditions thereof was stipulated therein, brought a suit in equity against the lessor to enjoin the latter from maintaining landlord and tenant proceedings to recover possession of the premises, based upon the lessor's right of re-entry which had arisen from the failure of the lessee to pay the taxes. The Supreme Court first held that there was "no foundation for the contention that it was within the ordinary power of a court of equity to relieve from the forfeiture," then proceeded "to consider whether the case as made by the record is brought within the general authority of a court of equity to relieve in cases of fraud, accident or mistake" (204 U. S. 57, 27 Sup. Ct. 217, 51 L. Ed. 360), found no proof of accident or mistake, or of fraud or wrongdoing on the part of the lessor, re-

versed the decree against her, which had been rendered below, and directed the dismissal of the bill for want of equity.

The Circuit Court of Appeals of the Second Circuit in In re Frazin, 183 Fed. 28, 29, 32, 105 C. C. A. 320, 33 L. R. A. (N. S.) 745, had a case in which a paragraph of the lease before it was identical in effect and nearly so in words with the provisions of the lease in hand regarding the rights of the lessor in case of bankruptcy of the lessee and the appointment of a receiver or a trustee in bankruptcy. There, as here, the trustee in bankruptcy of the estate of the lessee applied to the District Court in the bankruptcy case for and obtained an order which prohibited the lessor from re-entering the leased premises by reason of the breach of the condition and covenants of the lease on this subject. The lessor filed a petition in the Circuit Court of Appeals to revise this order. That court heard and considered the question on its merits and reversed the order of the District Court, with costs. To the same effect was the decision of the District Court as to the rights of the lessor under a like condition and covenant with reference to the effect of the bankruptcy of the lessee in In re Georgalas Bros. (D. C.) 245 Fed. 129, 131, 132.

In Galbraith v. Wood, 124 Minn. 212, 213, 215, 216, 144 N. W. 945, 50 L. R. A. (N. S.) 1034, Ann. Cas. 1915B, 609, the parties made a lease of a hotel for a term of 15 years; that lease provided that, if the lessee should be declared bankrupt or insolvent, the lessors might declare the term ended, re-enter the premises, take and hold them. When the lease was made the lessee paid to the lessor $20,000 on account of the rent for the third, fourth, and fifth years of the 15-year term. About 5 months after the making of the lease, the lessee was adjudged bankrupt, and the plaintiff was appointed his trustee in bankruptcy. On the same day the lessors gave notice to the lessee and trustee that they declared the lease ended, because the lessee was adjudged a bankrupt, and demanded possession of the premises. The trustee surrendered them, and sued the lessors for the $20,000 that the lessee had paid to them on the rent for the third, fourth, and fifth years of the term. The Supreme Court of Minnesota held that under the terms of the lease the lessors had the right to declare its term ended (124 Minn. 212, 215, 216, 144 N. W. 945, 50 L. R. A. [N. S.] 1034, Ann. Cas. 1915B, 609) and to re-enter and take possession of the premises, and that the trustee could not recover the $20,000.

In Brewster v. Lanyon Zinc Co., 140 Fed. 801, 813, 815, 816, 817, 818, 72 C. C. A. 213, Judge Van Devanter (now Mr. Justice Van Devanter of the Supreme Court) delivered the opinion of this court upon the turning points in the case in hand. In that case the lessor in an oil and gas lease brought a bill in equity against the lessee for a decree that the term of the lease was ended, that he was entitled to the immediate possession of the leased premises, that the lease was thenceforth void, and that it and its record be annulled, because the lessee had failed to perform its implied covenants in the lease to continue, after the first 5 years of the term thereof, with reasonable diligence, the work of exploration, development, and production, and

the lessor had notified the lessee that she elected to declare the lease void, and had demanded a surrender and cancellation thereof under the provision therein that "a failure of second party to comply with any of the above conditions renders this lease null and void." The District Court had dismissed the bill on a demurrer for want of equity. This court held: That there was no express, but that there was an implied, covenant in the lease on the part of the lessee to continue the exploration and development with reasonable diligence after the expiration of the first 5 years. That a covenant of that character was a condition of the lease, the breach of which entitled the lessor to avoid it (140 Fed. 812, 813, 815, 72 C. C. A. 213). To the same effect are Liggett v. Wilson, 224 Mass. 456, 113 N. E. 184, L. R. A. 1917A, 205; Gilchrist v. Foxen, 95 Wis. 428, 70 N. W. 585; Knutson v. Bostrak, 99 Wis. 469, 75 N. W. 156; Glocke v. Glocke, 113 Wis. 303, 89 N. W. 118, 122, 123, 57 L. R. A. 458). That, while relief against forfeitures may be granted where, as in failures to pay on time fixed money rents or installments of the purchase price of lands, damages from the breach are certain, and adequate compensation may be made, such relief is never granted where the damages from the breach because of which the forfeiture is incurred cannot be ascertained with reasonable certainty (140 Fed. 816, 72 C. C. A. 213). To the same effect are 1 Pomeroy's Equity Jurisprudence (4th Ed.) § 454; Geffert v. Geffert, 97 Kan. 57, 157 Pac. 384; Liddle v. Cook, 209 Fed. 182, 126 C. C. A. 130; Klein v. Ins. Co., 104 U. S. 88, 92, 26 L. Ed. 662; Westbrook v. Schmaus, 51 Kan. 558, 559, 560, 33 Pac. 306; Towle v. Pullen, 238 Fed. 107, 110, 111, 151 C. C. A. 183. That there is no insuperable objection to the enforcement of a forfeiture by a court of equity, and, when that is more consonant with the principles of right, justice, and morality than to withhold relief, or when there is full, clear, and strict proof of a legal right to a forfeiture, equity follows the law and enforces it (140 Fed. 819, 820, 72 C. C. A. 213). To the same effect are Brown v. Vandergrift, 80 Pa. 142, 148; Cherokee Const. Co. v. Bishop, 86 Ark. 489, 112 S. W. 189, 190, 192, 194; Negaunee Iron Co. v. Iron Cliffs Co., 134 Mich. 264, 96 N. W. 468, 472; Leach v. Leach, 4 Ind. 628, 629, 58 Am. Dec. 642. And this court reversed the dismissal of the bill and directed the court below to proceed to hear, determine, and adjudge the case in accordance with these rules.

[2] In view of the facts and decisions which have now been reviewed, why should the covenants of the lessee and the condition of the lease in hand be avoided, their performance prohibited, and the lessor deprived of the use of the leased premises that their terms assure to him? Counsel for the trustee of Philbin's estate answer, because it would be harsh and unconscionable not to do so. They say that, when Philbin bought the lessee interest in the lease, it provided that the lessee should have the use of the premises, rent free, for the remainder of the 15 years, which was about 8 years; that he paid to his assignor McGilton $9,000 for that use; that the trustee is now offered $12,000 for this use, if the court will avoid the condition of the lease and the covenants of the lessee, and adjudge it to

him exempt therefrom; and that for the benefit of the creditors of Philbin a court of equity ought so to do. All the rights and interest of the creditors of Philbin, if any, are derived from him. Against the lessor neither the trustee nor any creditor of Philbin has any greater right or interest in the leased premises or the lease than Philbin has, and the contentions of counsel in their behalf will therefore be discussed under his name. It is true that, when Philbin bought the lessee interest, the lease provided that the lessee should have the use of the premises, rent free, for the remainder of the term, but only on the condition that, if the lessee became insolvent or bankrupt, the lessor might at its election end the term of the lease and the lease itself, and take immediate possession of the premises free therefrom. Philbin bought subject to that condition, and assumed the covenants of the lease that on his insolvency or bankruptcy all his interest and right thereunder should cease at the option of the lessor. That this condition and these covenants did not render the lease or the contract it evidences harsh or unconscionable is demonstrated by the fact that Philbin paid $9,000, and another now offers $12,000, for the lessee interest in it, subject to this condition.

Under the terms of the lease it was indispensable to the validity of the assignment of the lease to Philbin that the lessor give its written consent thereto. Induced by this condition of the lease, and the lessee's covenants to surrender the lease and premises on his insolvency or bankruptcy, the lessor so consented. If there was such equity in the trustee's case here that the condition and covenants should be avoided, then the court ought certainly to avoid the lessor's consent to the assignment of the lease to Philbin and to put the parties as nearly as possible in their original positions, and in that case the trustee would have no more interest in the lease and the premises than if the covenants and the conditions were enforced. The fact is, however, that the contract was fair and just. Philbin and the respondent knew the condition and the covenants in the lease. He bought the chance of the use of the leased premises, rent free, for the 8 years, on the condition that he should not have that use after his insolvency or bankruptcy, if either occurred during the 15 years. The respondent consented to the assignment of the lease to Philbin in reliance upon the chance that he would soon become insolvent and bankrupt, and that then it could take back the premises. It is no ground for relief from a fair contract that a contemplated future contingency became an actuality somewhat earlier or later than the parties to the agreement as to the effect of its occurrence expected when they made it, and thus rendered the contract more or less beneficial than they respectively anticipated that it would be at that time. Marble Co. v. Ripley, 77 U. S. (10 Wall.) 339, 355, 356, 357, 19 L. Ed. 955; Texas Co. v. Central Fuel Oil Co., 194 Fed. 1, 21, 114 C. C. A. 21, 41. So it is that, if anything harsh or unconscionable crept into the situation of these parties, it did not inhere in the lease, or in its condition or its covenants, nor was it caused by any act or omission of the respondent. It was the early advent of the insolvency

and bankruptcy of Philbin, and that alone, which caused it, and for that advent the lessor was not responsible.

Counsel for the trustee contend that the decree below should be sustained, in view of the opinion and decision of the District Court in In re Larkey, 214 Fed. 867. There was in that case a condition in the lease similar to that in the lease here under consideration. An involuntary petition in bankruptcy was filed against the lessee and the District Court appointed a receiver thereunder. The leased premises were and continued to be in the possession of third parties under a sublease from the lessee that had been made with the consent of the lessor. The lessor filed a petition in the bankruptcy proceeding for the recovery of the premises on account of the breach of the condition and covenants of the lease, and there was a hearing thereon; but before the court filed its opinion an adjustment had been made between the lessee and his creditors, and there never was any adjudication in bankruptcy. The court held, first, that there had been no breach of the condition; and, second, that if there had been, nevertheless, in view of the facts which have been stated, and especially of the fact that the sublessees, whom the lessor had approved and who offered ample security for the payment of the rent, were in possession of the premises, the equity of the lessor's claim was not such as to successfully invoke the action of a court of equity. In view of the authorities that have been cited, the facts of this Larkey Case differ too radically from those of the case at bar to make it indicative of the conclusion which ought to be reached in this case. Many other decisions, opinions, and statements in textbooks have been cited and discussed by counsel for the trustee. They have not escaped our careful perusal and consideration. None of them, however, has been found which sustains such a decree as that in hand upon a similar state of facts, and they and the exhaustive arguments of counsel have failed to persuade that there is any equity in the claim, petition, or proof of the trustee in this case. The record presents full, clear, and strict proof of the right of the respondent, as a matter of law, to the termination of the term of the lease and the lease itself, and to the return of the leased premises to it upon the service of its notice of election to enforce that right, and in such a case equity ought to and it does follow the law and enforce the right. The decree and orders below must therefore be reversed.

[3] The trustee, however, in his petition has prayed for more. He has prayed that the court determine the rights of the respondent and of the trustee respectively in the leasehold estate. The leased premises are in the possession of the trustee. The respondent cannot take possession of them from him or from the court below without the order of that court or of this court. That court therefore had, and on this appeal this court has, jurisdiction of the property in controversy and of the parties to this litigation, and where a court of equity has such jurisdiction it has the power, and in the interest of the speedy administration of justice it is often its duty, to determine the rights of the parties, direct the disposition of the property, and end the litigation. It is thought, upon consideration, that this course ought

to be pursued in this case to that end. All the arguments, suggestions, and authorities of counsel have received consideration, and it is decided and concluded that the term of the lease involved in this controversy terminated when the respondent's notice, dated May 10, 1918, of its election to declare the lease forfeited and the term thereof ended, was served on or first came to the notice of Philbin or the trustee; that since that date, as against the respondent, the Empress Theatre Company, neither Philbin nor the trustee has had any right, title, or interest in the leased premises or under the lease, or any right to the possession or use thereof, but that the respondent has had since that time and still has the right to the exclusive possession and use of the premises; that the respondent is entitled to the immediate delivery to it by the court below and the trustee of these premises, and to the payment to it by the trustee as a part of his expenses of handling the estate of the bankrupt, of the reasonable value of the use thereof from the termination of the term of the lease aforesaid to the time of such delivery, and to the payment of its costs in the proceedings in the court below and in this court which he instituted by the filing of his petition for the relief granted by the orders reversed.

Let the order and decree of the court below, and the order of the referee referred to therein, be reversed, and let this case be remanded to the court below, with instructions to take further proceedings in accordance with the views expressed herein.